1  Chant Yedalian, State Bar No. 222325
   (chant@chant.mobi)
2  CHANT & COMPANY
   A Professional Law Corporation
3  1010 N. Central Ave.
   Glendale, CA 91202
4  Phone: 877.574.7100
   Fax: 877.574.9411
5
   Counsel for Plaintiff
6

7

8

9

10

11                     UNITED STATES DISTRICT COURT

12                  EASTERN DISTRICT OF CALIFORNIA

13

14  CIRENA TORRES, on behalf of herself and )   Case No.: 1:13-cv-01778-LJO-SAB
    all others similarly situated,          )
15                                           )   **NOTICE OF MOTION AND MOTION FOR**
                           Plaintiff,        )   **PRELIMINARY APPROVAL OF CLASS**
16                                           )   **ACTION SETTLEMENT**
    v.                                       )
17                                           )   [Filed concurrently with Declaration of Eric
    PET EXTREME, INC., and DOES 1            )   Gonsalves, Declaration of Chant Yedalian; and
18  through 10, inclusive,                   )   [Proposed] Order, lodged herewith]
                                             )
19                         Defendants.       )   **HEARING**
    _____ )   Date:    August 28, 2014
20                                               Time:    8:30 a.m.
                                                 Courtroom: 4 (7th Floor)
21                                               Judge: Hon. Lawrence J. O'Neill

22

23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

2    PLEASE TAKE NOTICE THAT on August 28, 2014 at 8:30 a.m. or as soon thereafter as

3    the matter may be heard before the Honorable Lawrence J. O'Neill in Courtroom 4 (7th Floor),

4    located at 2500 Tulare Street, Fresno, California 93721, Plaintiff, Cirena Torres, on behalf of

5    herself and on behalf of the proposed Settlement Class, will and hereby does move the Court,

6    pursuant to Federal Rules of Civil Procedure Rule 23, for an Order granting preliminary approval

7    of the proposed class action settlement on the terms and conditions set forth in the Stipulated

8    Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or

9    "Agreement"), a copy of which is attached hereto as Exhibit 1.[1]

10   Plaintiff further moves the Court for an Order:

11   1.    Certifying the Settlement Class for settlement purposes;

12   2.    Appointing Plaintiff Cirena Torres, as the Class Representative for the Settlement
13         Class;

14   3.    Appointing attorney Chant Yedalian of Chant & Company A Professional Law
15         Corporation as Class Counsel for the Settlement Class;

16   4.    Approving the proposed notice to the Settlement Class, including the Short-Form
17         Notice 1, Short-Form Notice 2, Full Notice, and Claim Form attached to the
18         Agreement as Exhibits 1, 2, 3, and 4, respectively;

19   5.    Directing notice to be made to the Settlement Class as described in the Agreement;

20   6.    Preliminarily approving the Settlement subject to final review by the Court;

21   7.    Establishing deadlines for Settlement Class members to submit a request for
22         exclusion from the Settlement and to submit objections to the Settlement; and

23   8.    Setting a final approval and fairness hearing on or about December 10, 2014.

24

25   This Motion is based upon this Notice of Motion and Motion and Exhibit 1 attached hereto,

26   the Declarations and other documents filed concurrently in support thereof, the papers and

27

28
_____
[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

MOTION FOR PRELIMINARY APPROVAL
                                                                          OF CLASS ACTION SETTLEMENT

pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.


DATED:  July 11, 2014                    CHANT & COMPANY
                                         A Professional Law Corporation



                                         By:    /S/ – Chant Yedalian
                                                Chant Yedalian
                                         Counsel For Plaintiff

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION………………….…………………………………………1

II.     FACTUAL SUMMARY…………………………………………………..... 1

III.    SETTLEMENT DISCUSSONS…………………………………………….2

IV.     THE SETTLEMENT…………………………………………………………3

V.      THE SETTLEMENT CLASS………………………………………………7

    A.     Numerosity………………………………………………………7

    B.     Commonality………………………………………………..8

    C.     Typicality………………………………………………9

    D.     Adequate Representation…………………………………………10

    E.     Rule 23(b)(3) Requirements Are Met…………………………………11

        1.     Predominance of Common Questions……………………………11

        2.     Superiority………………………………………………12

VI.     THE TWO-STEP APPROVAL PROCESS……………………………………14

VII.    THE PRESUMPTION OF FAIRNESS………………………………………...16

VIII.   THIS SETTLEMENT IS FAIR AND REASONABLE…………………………16

    A.     Risks of Continuing Litigation……………………………………17

        1.     "Willfulness"……………………………………………17

        2.     Class Certification…………………………………………18

    B.     Substantial Benefits of Settlement Compared to Risks of Continued Litigation….18

    C.     Agreement Provides That Change Of Law Before Final Approval
       of Settlement Will Not Compromise Settlement Class Members' Benefits……….20

    D.     The Settlement Is The Product of Extensive Arm's-Length Negotiations………..21

IX.     PROPOSED NOTICE TO THE CLASS THROUGH SHOULD BE APPROVED……...22

X.      MODEST ATTORNEY'S FEES WILL BE SOUGHT IN CONNECTION WITH
    FINAL APPROVAL OF THE SETTLEMENT………………………………………..23

XI.     A MODEST INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED
    PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT..25

1

2

**Page**

XII.    CONCLUSION.................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Federal Cases** Page(s)

3

*Abels v. JBC Legal Group, P.C.*

4
    227 F.R.D. 541 (N.D. Cal. 2005)……………………………………………………….10

5
*Amchem Products Inc. v. Woodward*
    521 U.S. 591 (1997)……………………………………………………….13

6

*Armstrong v. Board of School Directors of the City of Milwaukee*

7
    616 F.2d 305 (7th Cir. 1980)………………..……………………………………15

8
*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010)…………………………………...11, 12, 14, 18, 20, 21

9

*Battle v. Liberty National Life Ins. Co.*

10
    770 F.Supp. 1499 (N. D. Ala. 1991)……………………………….......................23

11
*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975)…………………………………………………….....8

12

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*

13
    917 F.2d 1171 (9th Cir. 1990)……………………………………….......................9

14
*Chalk v. T-Mobile USA, Inc.*
    560 F.3d 1087 (9th Cir. 2009)…………………………………….…………………12

15

*Class Plaintiffs v. City of Seattle*

16
    955 F.2d 1268 (9th Cir. 1992)…………………………………………………14-15

17
*Craft v. County of San Bernardino*
    624 F.Supp.2d 1113 (C.D. Cal. 2008)………………..…………….......................20, 24

18

*Deposit Guar. Nat'l Bank v. Roper*

19
    445 U.S. 326 (1980)……………………………………………….......................13

20
*Edwards v. First Am. Corp.*
    610 F.3d 514, 517 (9th Cir. 2010)……………………………………………….21

21

*Eisen v. Carlisle & Jacquelin*

22
    417 U.S. 156 (1974)………………………………………………….7, 13

23
*Elkins v. Equitable Life Ins. of Iowa*
    1998 WL 133747 (M.D. Fla. 1998)…………………………………………14

24

*Evon v. Law Offices of Sidney Mickell*

25
    688 F.3d 1015 (9th Cir. 2012)………………………………………………20

26
*First Am. Fin. Corp. v. Edwards*
    131 S.Ct. 3022 (June 20, 2011)……………………………………………...21

27

*First Am. Fin. Corp. v. Edwards*

28
    132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………………21

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

**Page(s)**

*Hammon v. Barry*
   752 F.Supp 1087 (D. D.C. 1990)……………………………………........................16

*Hanlon v. Chrysler Corp.*
   140 F.3d 1011 (9th Cir. 1998)……………………………………………..8, 9, 11, 12

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992)………………………………………………………...9

*Ingram v. The Coca-Cola Co.*
   200 F.R.D. 685 (N.D. Ga. 2001)…………………………………...……………......25

*In re Activision Securities Litigation*
   621 F.Supp. 415 (N.D. Cal. 1985)……………………………………….....................10

*In re Alcoholic Beverages Litigation*
   95 F.R.D. 321 (D.C. N.Y. 1982)……………………………………………........................8

*In re Cendant Corp., Derivative Action Litigation*
   232 F.Supp.2d 327 (D. N.J. 2002)……………………………...………………………...19

*In re Chicken Anti-Trust Litigation*
   560 F.Supp 957 (N.D. Ga. 1980)…………………………….……………........................16

*In re Computer Memories Sec. Litig.*
   111 F.R.D. 675 (N.D. Cal. 1986)………………...………………………………………….8

*In re Heritage Bond Litigation*
   2005 WL 1594403 (C.D. Cal. 2005)…………………………………….……………….19

*In re Pacific Enters. Sec. Litig.*
   47 F.3d 373 (9th Cir. 1995)……………….....…………………….……………15, 16, 24

*In re Portal Software, Inc. Sec. Litig.*
   2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007)………………………………………….15

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
   295 F.R.D. 438 (C.D. Cal. 2014)……………………………………………………….19

*Jordan v. Los Angeles*
   669 F.2d 1311 (9th Cir. 1982)…………….....……………………………………….7, 8

*Kesler v. Ikea U.S., Inc., et al.*
   2008 WL 413268 (C.D. Cal. 2008)…………......................................................................9, 10

*Lerwill v. Inflight Motion Pictures, Inc.*
   582 F.2d 507 (9th Cir. 1978)………………………………………………………….10

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1152 (9th Cir. 2001)…………….....………………………………….10-11, 12

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

**Page(s)**

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
834 F.2d 677 (7th Cir. 1987)…………………………………………………...16

*Martin v. Pacific Parking Systems, Inc.,*
2012 WL 2552694 (C.D. Cal. July 2, 2012),
Rule 23(f) petition for permission for discretionary
leave to appeal the District Court's denial of certification
granted by 9th Cir. Docket No. 12-80144……………………………………18

*Medrano v. WCG Holdings, Inc.*
2007 WL 4592113 (C.D. Cal. 2007)……………………………...………..8-9, 10

*Mirfasihi v. Fleet Mortgage Corp.*
356 F.3d 781 (7th Cir. 2004)…………………..………………………………...23

*Mullane v. Central Hanover Bank & Trust Co.*
339 U.S. 306 (1950)………………………………………………………………22

*Murray v. GMAC Mortgage Corp.*
434 F.3d 948 (7th Cir. 2006)………………………………………………...12-13

*Murray v. GMAC Mortgage Corp. ("Murray II")*
2007 WL 1100608 (N.D. Ill. 2007)…………………………….........................10, 14

*Nat'l Rural Telecomm. Coop. v. DirecTV*
221 F.R.D. 523 (C.D. Cal. 2004)…..………………………………………16, 17

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco*
688 F.2d 615 (9th Cir. 1982)……………………………………...…16-17, 19

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985)……………………………………………………………13

*Priddy v. Edelman*
883 F.2d 438 (6th Cir. 1989)………………………………………….........16

*Rodriguez v. West Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009)……………………………………………………25

*Silber v. Mabon*
18 F.3d 1449 (9th Cir. 1994)……………………………………………...22

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
79 F.R.D. 571 (E.D. Pa. 1978)…………………………………….........................16

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)……………………….……………………...7, 16, 17

*Steinberg v. Carey*
470 F.Supp. 471 (S.D. N.Y. 1979)……………………………………………...16

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

Page(s)

*Strube v. American Equity Life Ins. Co.*
226 F.R.D. 688 (M.D. Fla. 2005)………...…………………………………..14

*Tchoboian v. Parking Concepts, Inc.*
2009 WL 2169883 (C.D. Cal. 2009)……...………………………………..8-10

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)…………………………………………………...17

*Valentino v. Carter-Wallace*
97 F.3d 1227 (9th Cir. 1996)………………………………………………12

*Van Vranken v. Atl. Richfield Co.*
901 F.Supp. 294 (N.D. Cal. 1995)…………………………………………...25

*Yokoyama v. Midland Nat'l*
594 F.3d 1087 (9th Cir. 2010)………………………………………………...12

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1188 (9th Cir. 2001)………………………………………………...11

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………...………………2, 12, 14

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………...…*passim*

15 U.S.C. § 1681n.…………………………………………………………………2, 9, 12, 17

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23……………………………………………………….………7, 13

FRCP Rule 23(a)………………………………………………...…………………...7

FRCP Rule 23(a)(1)…………………………………………………………………...7

FRCP Rule 23(a)(2)……………………………………………………....…………...8

FRCP Rule 23(a)(3)……………………………………………………………………9

FRCP Rule 23(a)(4)…………………………………………………………………10

FRCP Rule 23(b)(3)………………………………...………......................7, 11, 12, 13, 14, 22

FRCP Rule 23(b)(3)(A), (B) (C) and (D)…………………………………………...13, 14

FRCP Rule 23(c)(2)(B)…………………………...………………….…………………...22

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

**Page(s)**

FRCP Rule 23(e)……………………………………………………….......…...…3, 15, 16, 17

FRCP Rule 23(e)(1)…………………………………………….…………….....…………...22

FRCP Rule 23(f)……………………………………………….…………….....…………………18

**Other Authorities**

*Newberg on Class Actions*, 4th Ed…………..…………….…………………………………15, 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

After extensive negotiations, the Parties have reached a proposed class-wide settlement of this lawsuit.

Plaintiff, Cirena Torres, on behalf of herself and on behalf of the proposed Settlement Class, hereby respectfully moves the Court for an Order granting preliminary approval of the proposed class action settlement.

## II.     FACTUAL SUMMARY

Plaintiff Cirena Torres is a customer of Pet Extreme, Inc. ("Pet Extreme").  Complaint ¶ 22.  Pet Extreme operates 10 retail stores in California which offer pet related goods and services for sale to the public.  Gonsalves Decl. ¶¶ 2-5.  These retail stores have signs and/or are otherwise designated with the name "Pet Extreme" or "Discount Pet."  *Id.* at ¶¶ 3-4.

On July 28, 2013, Ms. Torres made a purchase of pet related goods from a Pet Extreme retail store in Fresno, California.  Ms. Torres paid for her purchase with her credit card.  The customer receipt which Ms. Torres was provided at the point of sale had the expiration date of her credit card, the brand of the card (i.e., Visa, etc.), and the last four digits of her card number printed on the receipt.  Complaint ¶ 32.

During the Settlement Class period in this case, which spans from November 2, 2011 to October 18, 2013, all electronically printed customer receipts provided to customers at all Pet Extreme store locations displayed the respective cardholder's credit or debit card expiration date.  Gonsalves Decl. ¶¶ 6-7.  During this period, Pet Extreme printed a total of 853,314 electronically printed credit and debit card customer receipts which display the respective cardholder's expiration date.  Gonsalves Decl. ¶ 10.  Of the 853,314 receipts, 235,288 transactions were made with a unique credit or debit card (*i.e.*, one customer), and the remaining 618,026 receipts were with repeated cards (*i.e.*, additional transactions by that unique card or customer).  *Ibid.*

On October 18, 2013, Pet Extreme received a letter from Plaintiff's counsel entitled "Notice To Cease And Desist FACTA Violations; And Notice Of Class Action Lawsuit," together with an enclosed copy of the Complaint in this case.  Gonsalves Decl. ¶ 8.  It thereafter ceased

printing credit and debit card expiration dates on all electronically printed customer receipts at all of its retail stores. *Id.* at ¶ 9.

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681(c)(g)(1). A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs. 15 U.S.C. § 1681n.

Ms. Torres commenced this action on November 2, 2014 by filing a proposed class action complaint against Pet Extreme. Plaintiff's Complaint alleges, *inter alia*, that Pet Extreme willfully violated FACTA by printing the expiration date of credit and debit cards on electronically printed customer receipts printed at a point of sale or transaction. Pet Extreme denies any wrongdoing or violation of FACTA.

## III.   SETTLEMENT DISCUSSONS

Between October 2013 to May 2014, the Parties participated in extensive settlement discussions and exchanged information to facilitate those discussions. In May 2014, the Parties signed a Memorandum Of Understanding Of Settlement ("MOU") through which they agreed to a class-wide settlement of this action. The Parties promptly informed the Court of the MOU as well of the fact that there remained issues to work out, including the preparation of a long-form settlement agreement, including the Short-Form Notice to the Settlement Class (and the locations within each store where it will be placed), the Full Notice to the Settlement Class and the Claim Form. Dkt. No. 9. The Parties also explained to the Court that the MOU provides that if the Parties cannot agree on these remaining issues, the MOU shall nonetheless be fully enforceable by the Court and the Court shall resolve any such differences. *Ibid.*

Between May 2014 to July 2014, the Parties continued to work on the remaining issues. They reached agreement as to all issues in July 2014, and the product of all of the negotiations and

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

exchanges between October 2013 and July 2014 resulted in the Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement"), a copy of which is attached hereto as Exhibit 1.[2]

## IV.    THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Agreement.

A summary of the terms of the Settlement is as follows:

• This Settlement concerns consumer receipts printed during the period November 2, 2011 to October 18, 2013 which display the expiration date of the respective consumer's credit or debit card number.  Agreement ¶ 10.

• The subject receipts were printed at all 10 of Pet Extreme's Pet Extreme and Discount Pet retail stores within the State of California.  Gonsalves Decl. ¶¶ 6-7.

• For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "All consumers who, at any time during the period November 2, 2011 to October 18, 2013, were provided an electronically printed receipt at the point of a sale or transaction at any Pet Extreme or Discount Pet store, on which receipt was printed the expiration date of the consumer's credit card or debit card."  Agreement ¶ 10.

• Pet Extreme will establish a settlement fund in the amount of $475,000 (the "Settlement Fund").  Except for postage charges for the distribution of Pet Extreme Gift Cards, all other settlement administration costs (including but not limited to card issuance, printing and envelope charges) will be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  The first $57,645 of postage charges incurred for the distribution of Pet Extreme Gift Cards shall be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  After subtracting from the Settlement Fund Class Counsel's attorney fees and costs, a service payment to the Class Representative, settlement website programming costs, and, to the extent applicable any postage charges in excess of $57,645 incurred for the distribution of Pet

[2] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

Extreme Gift Cards, the remaining amount (the "Net Settlement Fund") will be divided by the total number of Settlement Class members who submit a valid and timely claim to determine each claiming Settlement Class member's pro-rata share (the "Pro-Rata Share").  In the event the Pro-Rata Share is equal to or exceeds $45, each Settlement Class member who submits a valid and timely claim will be mailed a Pet Extreme Gift Card in the amount of $45, the value of which will be paid and deducted from the Net Settlement Fund.  In the event the Pro-Rata Share is less than $45, each Settlement Class member who submits a valid and timely claim will be mailed a Pet Extreme Gift Card in the amount of the Pro-Rata Share, to be paid and deducted from the Net Settlement Fund.  Each Settlement Class member may submit only one claim, regardless of whether they made one or more credit or debit card transactions during the period November 2, 2011 to October 18, 2013.  Agreement ¶ 12(a).

- Each Pet Extreme Gift Card shall be fully transferable to any and all other persons and shall not expire.  The Pet Extreme Gift Cards may be used to make the purchase of any good or service at any Pet Extreme or Discount Pet store, but may not be redeemed for cash. Agreement ¶ 12(d).  Pet Extreme's stores have approximately 11,000 items of goods and services for sale.  Gonsalves Decl. ¶ 12.  The average total purchase price of goods by a customer during one transaction is around $32.00.  *Ibid.*  There are approximately 10,224 number of items that cost less than $45.00.  *Ibid.*

- If any residual funds from the Net Settlement Fund remain after payments are made to the Settlement Class members through the distribution of Pet Extreme Gift Cards, any and all such residual funds will be distributed to charities.  Agreement ¶ 12(b)(i).

- As part of the Settlement, Pet Extreme shall also implement a written FACTA compliance policy which states that it will not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any printed receipt provided to any customer that uses a credit or debit card to transact business at any Pet Extreme or Discount Pet store.  Agreement ¶ 12(e).

- Pet Extreme does not know, nor does Pet Extreme have access to any information which would enable it to determine, the identities of absent Settlement Class members.  Pet

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

Extreme has information regarding customers' credit and debit card numbers, but not the identity or addresses of those customers.  Gonsalves Decl. ¶ 11.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways: For a period of at least 180 days (180 days is the duration of the claims period), at each Pet Extreme and Discount Pet Store, Pet Extreme shall (i) conspicuously post Short-Form Notice 1 (which will be in the form and not smaller than the size attached to the Agreement as Exhibit 1) at the front door and at each register, and (ii) conspicuously post Short-Form Notice 2 (which will be in the form and not smaller than the size attached to the Agreement as Exhibit 2) on the Community Board of each store.  Agreement ¶ 13(a).  The Short Form Notice shall include the Settlement Website address and a toll-free telephone number which Settlement Class members may use to obtain further information.  During the same period, Pet Extreme will also post a notice of the settlement on the homepage of its website, www.petextreme.com.  Agreement ¶ 13(b).  The notice will state "Notice of Class Action Settlement" in boldface font and will contain a hyperlink to the Settlement Website, allowing users to click through to the Settlement Website.  *Ibid.*  Class Counsel will also provide a viewable and printable on-line long-form notice ("Full Notice"), which will be in the form attached to the Agreement as Exhibit 3, via a Settlement Website containing a description of the settlement terms.  Agreement ¶ 12(c).

- Settlement Class members will have 180 days from the date Short-Form Notice is first posted at Pet Extreme and Discount Pet stores to submit a claim for compensation from the Net Settlement Fund.  Agreement ¶ 12(b).  Settlement Class members may submit a Claim Form, (together with the required documentation) by postal mail or by facsimile.  Agreement ¶ 12(c). Alternatively, Settlement Class members may submit a claim by completing and submitting an electronic version of the Claim Form (and uploading and submitting the required documentation) on the internet through the Settlement Website.  *Ibid.*  Each Settlement Class member may submit only one claim, regardless of whether they made one or more credit or debit card transactions during the period November 2, 2011 to October 18, 2013.  *Ibid.*  A valid claim will require that a Settlement Class member produce evidence that he or she received a customer receipt at any time during the period November 2, 2011 to October 18, 2013 that displays the expiration date of his or

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

her credit or debit card.  Proof of claim may consist of the original or a copy of either (1) a customer receipt issued by Pet Extreme containing the expiration date of his or her credit or debit card showing that he or she made a transaction at any Pet Extreme or Discount Pet store at any time during the period November 2, 2011 to October 18, 2013, or (2) a credit or debit card statement (which will be encouraged to be, in redacted form) showing that he or she made a transaction at any Pet Extreme or Discount Pet store at any time during the period November 2, 2011 to October 18, 2013.  Agreement ¶ 12(a).

- Settlement Class members will have until 60 calendar days after the date Short-Form Notice is first posted by Pet Extreme, to exclude themselves from the Settlement (the "Opt-Out Deadline").  Agreement ¶ 15(a).

- Settlement Class members will have 60 calendar days after the date Short-Form Notice is first posted by Pet Extreme to object to the Settlement.  Any such objections must be filed with the Court and also served on Class Counsel and counsel for Pet Extreme.  Agreement ¶ 16(a).

- The Settlement, including the claims process, will be self-administered by the Parties.  Agreement ¶ 12(b) and (c).

- Except for postage charges for the distribution of Pet Extreme Gift Cards, all other administration costs (including but not limited to card issuance, printing and envelope charges) will be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  The first $57,645 of postage charges incurred for the distribution of Pet Extreme Gift Cards shall be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  *Id.* at ¶ 12(b).

- Class Counsel will apply for an incentive (service) award of $5,000 to the named Plaintiff, to be paid from the Settlement Fund, to compensate Plaintiff for her services as the Class Representative.  Agreement ¶ 20.

- Class Counsel will apply to the Court for an award of $118,750 for fees and costs, to be paid from the Settlement Fund, that would compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, causing Pet Extreme to implement a new written policy concerning FACTA, and implementing the Settlement.  Agreement ¶ 21.

• Class Counsel's motion for an award of attorney's fees and costs and the Class Representative's motion for service (or incentive) award will be posted on the Settlement Website no later than 30 calendar days before the final fairness hearing scheduled by the Court. Agreement ¶ 16(b) and (c).  Any objection must be filed with the Court and also served on Class Counsel and counsel for Pet Extreme no later than 21 calendar days before the fairness hearing, or as the Court otherwise directs.  *Ibid.*

• The Agreement includes a term of "No Admission" such that "Nothing contained in th[e] Agreement, nor the consummation of the Settlement, is to be construed or deemed an admission of liability, culpability, or wrongdoing on the part of any of the Parties."  *Id.* at ¶ 28.

## V.   THE SETTLEMENT CLASS

For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class:  "All consumers who, at any time during the period November 2, 2011 to October 18, 2013, were provided an electronically printed receipt at the point of a sale or transaction at any Pet Extreme or Discount Pet store, on which receipt was printed the expiration date of the consumer's credit card or debit card."  Agreement  ¶ 10.

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

### A.   <u>Numerosity</u>

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[3]

---

[3] "Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible.  In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Jordan*, *supra*, 669 F.2d at 1319.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1    In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64,

2  and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that

3  the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a

4  class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic*

5  *Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111

6  F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number

7  of class members, but demonstrated that class would "obviously be sufficiently numerous").

8    Here, the 235,288 transactions made with a unique credit or debit card (Gonsalves Decl. ¶

9  10) demonstrates that the sheer number of class members easily surpasses the class sizes in *Jordan*

10  which the Ninth Circuit deemed satisfied the numerosity requirement.  The fact that, by the very

11  nature of the Settlement Class, its members are unknown and cannot be readily identified, further

12  dictates that joinder is impracticable.  *Jordan*, 669 F.2d at 1319-1320.

13    **B.    Commonality**

14    Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This

15  commonality requirement must be "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d

16  1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule.

17  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common

18  core of salient facts coupled with disparate legal remedies within the class." *Ibid.*  Where a class is

19  united by a common interest in determining whether a defendant's broad course of conduct is

20  actionable, commonality is not defeated "by slight differences in class members' positions."

21  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  Commonality cannot be disputed here.

22    All class members share two common legal questions – whether Pet Extreme violated

23  FACTA by printing the expiration date of debit and credit cards on receipts, and whether its

24  practice of doing so was "willful."  None of the relevant questions relates to the conduct of the

25  class members, but rather all focus on Pet Extreme's conduct and culpability in violating FACTA.

26  See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition

27  for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-

28  80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1  that the class members are entitled to statutory damages.  Moreover, whether [defendant] violated

2  FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG*

3  *Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts

4  across the class.  Each member of the proposed class received a non-compliant receipt from

5  [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL

6  413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim

7  are nearly, if not entirely, identical.  There is a common core of salient facts across the class.  Each

8  member of the proposed class received a non-compliant receipt from IKEA after the December 4,

9  2006 FACTA compliance deadline.  The overriding legal issue is whether IKEA's noncompliance

10 was willful, so that the class members are entitled to statutory damages.")

11      **C.**    **<u>Typicality</u>**

12      Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ...

13 of the class."  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those

14 of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

15 Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is

16 enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently

17 parallel to insure a vigorous and full presentation of all claims for relief.'"  *Cal. Rural Legal*

18 *Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).  Moreover,

19 typicality refers to the "nature of the claim … of the class representative, and not to the specific

20 facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

21 (9th Cir. 1992).  The test of typicality is thus "whether other members have the same or similar

22 injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

23 whether other class members have been injured by the same course of conduct." *Ibid*.

24      Here, Plaintiff and all other class members allege the same injury, violation of their

25 FACTA rights resulting from the same course of conduct — the printing of the expiration date of

26 their card number on credit or debit card receipts.  Accordingly, this lawsuit is based on conduct

27 which is not unique to Plaintiff, but on standardized, uniform conduct that is common to all class

28 members.  Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is

sought for all class members for Pet Extreme's "willful" violation of FACTA.  Accordingly, the typicality requirement is satisfied.  *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("Murray II") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification.")

### D.  **Adequate Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Representation is adequate if (1) class counsel is qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, there are no conflicts of interest between Plaintiff and Settlement Class members. Plaintiff and each class member assert identical claims for statutory damages arising from the same facts, *i.e.*, Pet Extreme's printing of the expiration date of the respective credit or debit card on receipts.  Thus, there is no potential for conflicting interests in this action.  *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff and class members arise from defendants' use of form letters allegedly violating the Fair Debt Collection Practices Act).  Moreover, there is no basis for asserting against Plaintiff any unique defenses that Pet Extreme could not assert against any other Settlement Class member.  Nor is there any basis to suggest that Plaintiff lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.  Plaintiff is represented by highly capable and competent counsel experienced in class action litigation, including FACTA lawsuits. Yedalian Decl. ¶¶ 34-49.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

1  *Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel

2  were experienced practitioners).

3        **E.**        <u>**Rule 23(b)(3) Requirements Are Met**</u>

4        The Parties seek certification pursuant to Rule 23(b)(3), which authorizes certification if

5  "the court finds that the questions of law or fact common to class members predominate over any

6  questions affecting only individual members, and that a class action is superior to other available

7  methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).  Rule 23(b)(3)'s

8  predominance and superiority factors are satisfied.

9                      **1.**      **Predominance of Common Questions**

10        To satisfy predominance, common questions of law or fact must "present a significant

11  aspect of the case" and be capable of resolution "in a single adjudication."  *Hanlon*, 150 F.3d at

12  1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

13        The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant

14  adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this

15  question "is the notion that the adjudication of common issues will help achieve judicial

16  economy."  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

17        In this case, whether Pet Extreme violated FACTA "willfully" is the central issue that

18  clearly predominates over any individual issues.  Whether Pet Extreme did so depends upon facts

19  concerning its own conduct — conduct that applies uniformly to all class members in this case.

20        That common issues predominate is also bolstered by the fact that the available remedy in

21  this case is statutory damages.  As the Ninth Circuit explained in *Bateman v. American Multi-*

22  *Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the

23  potential class members can demonstrate actual harm resulting from a willful violation, they are

24  entitled to statutory damages."

25        That common issues predominate is also evidenced by the fact that all class members'

26  claims involve the very same conduct by Pet Extreme—the printing of receipts which contain the

27  credit or debit card's expiration date.

28        "When common questions present a significant aspect of the case and they can be resolved

for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

### 2.  Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. Here, class members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009)  ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[4], the

---

[4]  "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n." *Bateman, supra*, 623 F.3d at 715.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1   Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which

2   the potential recovery is too slight to support individual suits, but injury is substantial in the

3   aggregate."

4        The Supreme Court has similarly held.  *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797,

5   809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs

6   would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l*

7   *Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs

8   totaled $1,006.00.  Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a

9   central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No

10  competent attorney would undertake this complex antitrust action to recover so inconsequential an

11  amount.  Economic reality dictates that petitioner's suit [involving individual damage of $70]

12  proceed as a class action or not at all").

13       The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are

14  satisfied here.

15       Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily,

16  these factors are (A) the interest of class members in individually controlling the prosecution of

17  separate actions; (B) the extent and nature of any litigation concerning the controversy already

18  commenced by other class members; (C) the desirability or undesirability of concentrating the

19  litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in

20  the management of a class action.  However, when a court reviews a class action settlement, the

21  fourth factor does not apply.  In deciding whether to certify a settlement class action, a district

22  court "need not inquire whether the case, if tried, would present intractable management

23  problems."  *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  The remaining

24  factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

25       First, class members have no particular interest in individually controlling the prosecution

26  of separate actions.  Statutory damages cannot exceed $1,000, and the fact of the matter is that

27  there is no other known separate action filed or prosecuted by any other class members.

28  Moreover, any Settlement Class member who wants to pursue actual damages can opt out of the

1  Settlement.

2       Second, and as explained above, the Parties are not aware of any other litigation regarding

3  the FACTA violations at issue in this case.

4       Third, it is desirable to concentrate the litigation in this forum because all of the named

5  parties, including Pet Extreme, reside in California and the alleged FACTA violations involve Pet

6  Extreme's stores in California and within this district.   Moreover, the parties have reached a

7  Settlement.   "With the settlement in hand, the desirability of concentrating the litigation in one

8  forum is obvious."  *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998);

9  *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth

10 Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

11      The conclusion is inescapable that there simply is no better method than a class action for

12 resolving all the claims of the Settlement Class Members in this case.   The conclusion of the court

13 in *Murray II*, where the court certified a case involving claims for statutory damages under the

14 FCRA, applies equally here:

15      "This is a case where class certification presents the most efficient means of

16      adjudicating the controversy.   The class is numerous but the potential recovery for

17      each class member is quite small.   Indeed, it is exceedingly unlikely that many

18      individuals would wish to go to court for a potential recovery of $100-or that they

19      could find counsel willing to represent them."  *Murray II*, 2007 WL 1100608 *7.

20      Finally, FACTA is a consumer protection statute which serves not just to compensate, but

21 also to "deter" future violations.  *Bateman*, 623 F.3d at 718.   As the Ninth Circuit has also

22 explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that

23 certification of a class here would preserve, if not amplify, the deterrent effect of FACTA."  *Id.* at

24 723.

25 **VI.     THE TWO-STEP APPROVAL PROCESS**

26      There is a "strong judicial policy that favors settlements," particularly in class actions and

27 other complex cases where substantial resources can be conserved by avoiding the time, cost, and

28 rigors of continued litigation.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

1 │ 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

2 │ A settlement of class litigation must be reviewed and approved by the Court.  FRCP Rule

3 │ 23(e).  This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final

4 │ review after notice has been distributed to the class members for their comment or objections.

5 │ This Motion concerns the first step.

6 │ "The first step is a preliminary, pre-notification hearing to determine whether the proposed

7 │ settlement is 'within the range of possible approval.'" *Armstrong v. Board of School Directors of*

8 │ *the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation

9 │ § 1.46, at 53-55 (West 1977)).  The purpose of this hearing is "to ascertain whether there is any

10 │ reason to notify the class members of the proposed settlement and to proceed with a fairness

11 │ hearing." *Ibid.*  "[I]f the proposed settlement 'appears to be the product of serious, informed, non-

12 │ collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

13 │ treatment to class representatives or segments of the class, and falls within the range of possible

14 │ approval, then the court should direct that the notice be given to the class members of a formal

15 │ fairness hearing.'" *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794 at 14-15

16 │ (N.D. Cal. June 30, 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

17 │ At the second step of the approval process (usually referred to as the fairness hearing or

18 │ final approval hearing), after class members have been notified of the proposed settlement and

19 │ have had an opportunity to be heard, the court makes a final determination whether the settlement

20 │ is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.

21 │ Thus, the preliminary approval of the trial court is simply a conditional finding that the

22 │ settlement appears to be within the range of acceptable settlements.    As Professor Newberg

23 │ comments, "The strength of the findings made by a judge at a preliminary hearing or conference

24 │ concerning a tentative settlement proposal may vary.  The court may find that the settlement

25 │ proposal contains some merit, is within the range of reasonableness required for a settlement

26 │ offer, or is presumptively valid subject only to any objections that may be raised at a final

27 │ hearing." *Newberg on Class Actions*, 4th Ed., § 11:26.

28 │

- 15 -                MOTION FOR PRELIMINARY APPROVAL
                      OF CLASS ACTION SETTLEMENT

**VII.   THE PRESUMPTION OF FAIRNESS**

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith.  *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation.  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

**VIII.   THIS SETTLEMENT IS FAIR AND REASONABLE**

The Settlement is well within the range of reasonableness and preliminary approval should be granted.   No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

circumstances presented by each individual case."   *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval."   *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961.  Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A.     Risks of Continuing Litigation

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery.  Yedalian Decl. ¶ 5.

### 1.     "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that Pet Extreme engaged in "willful" conduct.  However, Pet Extreme has vigorously denied that its conduct was willful.  Yedalian Decl. ¶ 7.  In contrast, Plaintiff believes, among other things, that the printing of excess digits was reckless and the result of a lack of adequate measures to safeguard consumer rights. *Ibid.*

Regardless of how strongly the Parties feel about the merits, the Parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to the particular facts of this case.  Yedalian Decl. ¶ 7.

### 2.       Class Certification

The Parties have sharply divergent positions on class certification in this case, absent a settlement.  Pet Extreme has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment.  Agreement ¶ 3.

Plaintiff believes that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another FACTA case, strongly supports certification in this case.  Yedalian Decl. ¶ 9.

Yet, absent a settlement, class certification remains a hotly contested matter in this case, and there are risks attendant in continued litigation of these issues, including, at a minimum, delays and potential appeals.  Yedalian Decl. ¶ 10.

For example, even after the Ninth Circuit's decision in *Bateman*, one District Court within the Central District denied class certification in a FACTA case, *Martin v. Pacific Parking Systems, Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012).  On September 6, 2012, the Ninth Circuit granted a Rule 23(f) petition for permission for discretionary leave to appeal the District Court's denial of certification in *Martin* (9th Cir. Docket No. 12-80144), and that appeal remains pending Yedalian Decl. ¶ 11.

In sum, while Plaintiff feels strongly about certification in this case, *Martin* is an example of a FACTA case demonstrating the risks inherent in certification, including, at a minimum, delays and potential appeals.  Yedalian Decl. ¶ 12.

### B.       <u>Substantial Benefits of Settlement Compared to Risks of Continued Litigation</u>

The Settlement provides for substantial benefits.

The Settlement establishes a Settlement Fund in the amount of $475,000 plus an additional up to $57,645 of postage charges for the distribution of Pet Extreme Gift Cards to be paid for separately by Pet Extreme and not from the Settlement Fund.  Additionally, other settlement administration costs (including but not limited to card issuance, printing and envelope charges,

and posting of notices on location at the stores) will be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  Further, the Parties have agreed to self-administer the Settlement and claims process, which would typically require payment to a settlement administrator estimated at $40,000.  Yedalian Decl. ¶ 14.

Further, the value of the Pet Extreme Gift Card is considerable in that it is 45% of the minimum statutory damages ($100) available for a willful violation of FACTA.  Although compared to the maximum possible recovery of $1,000 in statutory damages, $45.00 is a 4.5% value (which is not insubstantial), the propriety of awarding *full* statutory damages to Settlement Class members who do not claim actual monetary loss is strongly disputed.  Many FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory damages to begin with, at the very least "excessive" statutory damages.  Since it remains to be seen how courts will resolve such constitutional challenges to statutory damage awards under FACTA, the value negotiated by the Parties represents a fair compromise well within the range of reasonableness.  Yedalian Decl. ¶ 15.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

The $45 Pet Extreme Gift Card is also reasonable when compared to the value of similar benefits in other FACTA cases.  For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against a large corporate defendant.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1    Another benefit of this lawsuit and Settlement is the fact that, as part of the Settlement, Pet

2  Extreme shall also implement a written FACTA compliance policy which states that it will not

3  print more than the last five digits of the credit or debit card number nor the credit or debit card

4  expiration date upon any printed receipt provided to any customer that uses a credit or debit card

5  to transact business at any Pet Extreme or Discount Pet store.  Agreement ¶ 12(e).  This FACTA

6  compliance policy ensures that Pet Extreme will not continue to violate the law, willfully,

7  inadvertently or otherwise.  Yedalian Decl. ¶ 16.

8    Such non-pecuniary benefits are properly considered in judging the results of the lawsuit.

9  *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking

10  into account fact that, in addition to monetary aspects, the defendant stopped the practices at

11  issue).  This is especially true with a consumer protection statute such as FACTA which, as the

12  Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at

13  718.  "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to

14  identity thieves.'"   *Ibid.*   The importance of such non-pecuniary benefits was also recently

15  explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair

16  Debt Collection Practices Act:

17    "The FDCPA is a consumer protection statute and was intended to permit, even

18    encourage, attorneys like Lemberg to act as private attorney generals to pursue

19    FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to

20    benefit from this case.  Mickell admits that he has ceased his practice of sending

21    letters to debtor's workplaces, a benefit to all class members.  Furthermore, certifying

22    the class will serve a 'deterrent' component to other debt collectors who are engaging,

23    or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of*

24    *Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

25    **C.**    **Agreement Provides That Change Of Law Before Final Approval**

26         **of Settlement Will Not Compromise Settlement Class Members' Benefits**

27    A further benefit of the Settlement assures that if there is an intervening change of law

28  before final approval of the Settlement, the Settlement and Settlement benefits will continue to

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1    remain valid, enforceable and available to Settlement Class members.  Agreement ¶ 24.

2         The significance of this benefit cannot be understated.  For example, as explained by the

3    Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress

4    enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act").  The

5    Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA

6    violations to those defendants that printed an <u>*expiration date*</u> "between December 4, 2004, and

7    June 3, 2008 [the date the Clarification Act was enacted]."  *Bateman*, *supra*, 623 F.3d at 717.  As a

8    result of the change of law imposed by the Clarification Act, many FACTA class action cases

9    were dismissed without any recovery for consumers.  Yedalian Decl. ¶ 18.

10        The risks posed by potential changes in the law through judicial opinions likewise cannot

11   be understated, particularly in the dynamic area of statutory damage issues.  For example, in a case

12   involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the

13   Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing,

14   even in the absence of actual monetary damages: "The injury required by Article III can exist

15   solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"

16   *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).  However, the United States

17   Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue.

18   *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011). The Supreme Court's anticipated

19   decision was expected to have potentially far reaching effects in the area of statutory damage

20   cases.  The Supreme Court's grant of *certiorari* caused substantial uncertainty and provided

21   defendants facing statutory damage allegations with a potential defense that the law may change.

22   On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as

23   improvidently granted.  *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012).

24   Thus, while no change of law occurred as a result of the Supreme Court's actions in *Edwards*,

25   these events likewise demonstrate the potential for changes in law and the real benefits conferred

26   by the Settlement which safeguards against any such potential changes.  Yedalian Decl. ¶ 19.

27        **D.**    <u>**The Settlement Is The Product of Extensive Arm's-Length Negotiations**</u>

28        The Agreement is the product of extensive, adversarial, arm's-length discussions,

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective Parties' strengths and weaknesses.  Yedalian Decl. ¶¶ 20-24.

## IX.   PROPOSED NOTICE TO THE CLASS THROUGH SHOULD BE APPROVED

Rule 23(e)(1) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances."  Like Rule 23(e)(1), Rule 23(c)(2)(B) does not require actual notice or that a notice be actually received. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Pet Extreme does not know, nor does Pet Extreme have access to any information which would enable it to determine, the identities of absent Settlement Class members.  Gonsalves Decl. ¶ 11.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways:

**Short-Form Notice**

For a period of at least 180 days (180 days is the duration of the claims period), at each Pet Extreme and Discount Pet Store, Pet Extreme shall (i) conspicuously post Short-Form Notice 1 (which will be in the form and not smaller than the size attached to the Agreement as Exhibit 1) at the front door and at each register, and (ii) conspicuously post Short-Form Notice 2 (which will be in the form and not smaller than the size attached to the Agreement as Exhibit 2) on the Community Board of each store.   Agreement ¶ 13(a).  The Short Form Notice shall include the Settlement Website address and a toll-free telephone number which Settlement Class members may use to obtain further information.

**Pet Extreme Website Notice**

Pet Extreme will also post a notice of the settlement on the homepage of its website, www.petextreme.com.   Agreement ¶ 13(b).   The notice will state "Notice of Class Action

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

Settlement" in boldface font and will contain a hyperlink to the Settlement Website, allowing users to click through to the Settlement Website.  *Ibid.*

### Settlement Website Notice

Class Counsel will also provide a viewable and printable on-line long-form notice ("Full Notice"), which will be in the form attached to the Agreement as Exhibit 3, via a Settlement Website containing a description of the settlement terms.  Agreement ¶ 12(c).

### Full Notice and Claim Form

The Settlement Website will also provide, free of charge, viewable, printable, and downloadable copies of relevant documents, including the Full Notice and Claim Form.   Further, Settlement Class members also have the option of submitting their claim through the Settlement Website, by completing and submitting an electronic version of the Claim Form on the internet through the Settlement Website.  Agreement ¶ 12(c).

In a case like this, where neither the names nor addresses of Settlement Class members can be ascertained despite reasonable effort, notice by publication and website clearly suffices. *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (notice by publication and website adequate where individual notice impossible; also recognizing increasing importance of website notice as a substitute form of notice); *Battle v. Liberty National Life Ins. Co.*, 770 F.Supp. 1499, 1515, fn.47 (N. D. Ala. 1991) (individual notice not required where absent members are not identified and cannot be located through diligent efforts) *affirmed*, 974 F.2d 1279 (11th Cir. 1992). Posting of notices at all Pet Extreme store locations which targets Settlement Class members who frequent Pet Extreme locations, leaves no room for doubt that the Parties have agreed to provide the best notice under the circumstances.

## X.   MODEST ATTORNEY'S FEES WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will request an award of attorney's fees and costs in the amount of $118,750 (Agreement ¶ 21) to compensate Class Counsel for fees and costs incurred in investigating the facts, prosecuting the lawsuit, negotiating the Settlement, drafting the Settlement documents, attempting to obtain the Court's preliminary

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1  and final approval of the Settlement, causing Pet Extreme to implement a new written policy

2  concerning FACTA, and ensuring that the Settlement is properly administered and implemented

3  through the Parties' agreed upon self-administration process.  Yedalian Decl. ¶ 25.

4      While, in connection with final approval, Class Counsel intends to substantiate these fees

5  by providing an account of time devoted to this case, there are a few things worth mentioning

6  now concerning fees.

7      The attorney's fees and costs that will be requested amounts to 25% of the Settlement

8  Fund.  Further, after adding to the Settlement Fund the separate $57,645 of postage charges for the

9  distribution of Pet Extreme Gift Cards to be paid for separately by Pet Extreme and not from the

10 Settlement Fund, and the estimated $40,000 saved by the self-administration of the Settlement,

11 rather than hiring a third-party settlement administrator, the percentage of fees, relative to the

12 overall recovery, shrinks further to approximately 20.7%.  Thus, the fees which will be requested

13 are well within the 25% "benchmark" in the Ninth Circuit.  *In re Pacific Enterprises Securities*

14 *Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) ["Twenty-five percent is the 'benchmark' that district

15 courts should award in common fund cases"].

16     Also, as explained above, while these percentages are modest, they do not take into

17 account the non-pecuniary benefits resulting from Pet Extreme's implementation of a written

18 FACTA compliance policy.  *See, e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113,

19 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the

20 defendant stopped the practices at issue and explaining that "'Attorneys' fees [in class action

21 cases] may be awarded even though the benefit conferred is purely non-pecuniary in nature.'").

22     It should also not be lost on the Court that Class Counsel has borne, and continues to bear,

23 the entire risk of litigation associated with the lawsuit on a pure contingency basis, and that as a

24 result of the time committed by Class Counsel to this matter, Class Counsel was precluded from

25 taking on other matters which were available.   Yedalian Decl. ¶ 29.

26     Again, Class Counsel will address these issues in further detail when requesting fees in

27 connection with final approval, but believed it was important at this juncture to at least provide

28 the Court with a basic summary of the rationale and reasons for the requested fee amounts.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

The fees that will be requested in connection with final approval are well within the "benchmark," and further justified by the results achieved, the time incurred and risks undertaken.

## XI. A MODEST INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will request, on behalf of the named plaintiff, Cirena Torres, aN incentive (service) award of $5,000 (Agreement ¶ 20), to compensate her for her services as the representative of the Settlement Class.  Plaintiff was subjected to the risk of intrusive discovery, risked liability for defense costs in the event the litigation was unsuccessful, and contributed valuable time and resources during the pendency of the litigation, all of which will be further detailed in connection with final approval proceedings. Yedalian Decl. ¶ 32.

"Incentive *awards* are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).   "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Ibid.*

In *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  In *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995), a $50,000 incentive award was approved for similar participation.

Here, there is only one class representative, and the requested enhancement award in the amount of $5,000 is modest, reasonable, and should be approved in connection with final approval.

## XII. CONCLUSION

The proposed class action Settlement is well within the range of reasonable settlements.  It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

1 negotiations conducted by experienced counsel.

2     Plaintiff respectfully requests that the Court grant preliminary approval of the proposed

3 settlement, sign and enter the proposed Order, and set a final approval hearing on or about

4 December 10, 2014.

5

6                     Respectfully submitted,

7

8 DATED:  July 11, 2014         CHANT & COMPANY
                                A Professional Law Corporation

9

10

11                     By:   /S/ – Chant Yedalian
                          Chant Yedalian

12                     Counsel For Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT