1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRENA TORRES, on behalf of herself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PET EXTREME,<br><br>                    Defendant. | Case No.  1:13-cv-01778-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(ECF Nos. 11-13)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiff Cirena Torres, on behalf of herself and all others similarly situated, filed this class action complaint against Defendant Pet Extreme alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. 1681 et seq.  Currently before the Court is the joint motion of Plaintiff Cirena Torres and Defendant Pet Extreme for preliminary approval of the class action settlement.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Pet Extreme operates a chain of retail stores offering a variety of goods and services for sale to the public.  (Compl. ¶ 11, ECF No. 1.)  In conducting business, Defendant accepts credit card and debits cards.  (Id. at ¶ 31.)  The FACTA provides that by December 4, 2006, merchants were to comply the Act, which requires that no more than the last five digits of

1

1   the credit card number can be printed on the receipt and the expiration date of the card must be

2   deleted.  (Id. at ¶¶ 29, 39.)  Plaintiff Torres contends that she made a purchase from Defendant

3   after December 2006 using a credit card or debit card and the expiration date of her card, the

4   brand of the card, and the last four digits of the card were printed on the receipt.  (Id. at ¶ 32.)

5       On November 2, 2013, Plaintiff filed this class action alleging that Defendant is in

6   violation of the FACTA by printing the expiration date of credits cards on customer receipts.

7   After engaging in negotiations, the parties are seeking preliminary approval of the class-wide

8   settlement of this lawsuit.

9                                             **II.**

10                                    **LEGAL STANDARD**

11      The Ninth Circuit has declared that a strong judicial policy favors settlement of class

12  actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

13  especially where settlement occurs prior to class certification, courts must peruse the proposed

14  settlement to ensure the propriety of class certification and the fairness of the settlement.  Stanton

15  v Boeing, 327 F.3d 938, 952 (9th Cir. 2003).

16      To certify a class, a plaintiff must demonstrate that all of the prerequisites of Rule 23(a),

17  and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure have

18  been met.  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013).  This requires

19  the court to "conduct a 'rigorous analysis' to determine whether the party seeking class

20  certification has met the prerequisites of Rule 23."  Wright v. Linkus Enterprises, Inc., 259

21  F.R.D. 468, 471 (E.D. Cal. 2009).

22      Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be

23  approved by the court which must find that the settlement is fair, reasonable, and adequate.  The

24  role of the district court in evaluating the fairness of the settlement is not to assess the individual

25  components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-

26  19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).

27  ///

28  ///

1

**III.**

2

**DISCUSSION**

3

**A.      Certification of the Class**

4        Even where the certification of the class is unopposed, the court must examine whether

5   the settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil

6   Procedure of numerosity, commonality, typicality, and adequacy of representation.   Hanlon v.

7   Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).   The court is required to pay " 'undiluted,

8   even heightened attention' to class certification requirements in a settlement context."   Hanlon,

9   150 F.3d at 1019 (quoting Amchem Products, Inc. v. Windsor ("Amchem"), 521 U.S. 591, 620

10  (1997)).   The dominant concern of Rule 23(a) and (b) is whether the proposed class has

11  sufficient unity so that it is fair to bind absent class members to the decisions of the class

12  representatives.   Amchem, 521 U.S. at 621.

13        1.      Numerosity

14        The numerosity requirement is satisfied where "the class is so numerous that joinder of

15  all members is impracticable."   Fed. R. Civ. P. 23(a)(1).   The parties have identified 235,288

16  transactions that were made with a unique credit or debit card.   (Decl. of Eric Gonzalves ¶ 10,

17  ECF No 12.)   The number of individual class members in this instance far exceeds the number

18  that have been found to be so numerous that joinder of all members would be impracticable.   See

19  Sullivan v. Chase Inv. Services of Boston, 79 F.R.D. 246, 257 (N.D. Cal. 1978) ("a class of 1000

20  clearly satisfies the numerosity requirement").   The class which exceeds 235,000 members

21  satisfies the numerosity requirement.

22        2.      Commonality

23        The commonality requirement is satisfied where "there are questions of law or fact that

24  are common to the class."   Fed. R. Civ. P. 23(a)(2).   The key inquiry is "whether class treatment

25  will 'generate common answers apt to drive the resolution of the litigation.' "   Arredondo v.

26  Delano Farms Co., __ F.R.D. __, 2014 WL 710945, at *7 (E.D. Cal. Feb. 21, 2014) (quoting

27  Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2551 (2011)).   Commonality is not

28  required for all of the claims.   It is sufficient if there is one single issue common to the proposed

1  class.  True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1064 (C.D. Cal. 2010).

2      Plaintiffs contend that all class members share two common legal questions: 1) whether

3  Defendant violated the FACTA by printing the expiration date of the card on the receipts; and 2)

4  whether the alleged violation was willful.  The Court agrees that the potential claims of all class

5  members arise from the same conduct.  All class members are alleged to have received a receipt

6  that did not comply with the FACTA when making a purchase from one of Defendant's

7  establishments.  The facts and legal issues are substantially identical for all class members.  The

8  Court finds that class relief based upon commonality is appropriate in this instance.

9      3.   Typicality

10     Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

11  of the claims or defenses of the class[.]"  This does not require the claims to be substantially

12  identical, but that the representatives claims be "reasonably co-extensive with those of the absent

13  class members."  Hanlon, 150 F.3d at 1020.  Typicality is determined by looking to the nature of

14  the claims of the class representatives and tests "whether other members have the same or similar

15  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

16  whether other class members have been injured by the same course of conduct."  Hanon v.

17  Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D.

18  279, 282 (C.D.Cal.1985)).

19     Plaintiff alleges that she and the unnamed class members were subjected to the same

20  injury, violation of their rights under the FACTA, by the same conduct, having the expiration

21  date of their credit or debit card printed on their receipt.  The conduct at issue here is not unique

22  to Plaintiff, but is common to all class members.  Furthermore, the FACTA provides that civil

23  liability for willful noncompliance is "any actual damages sustained by the consumer as a result

24  of the failure or damages of not less than $100 and not more than $1,000."  Bateman v.

25  American Multi-Cinema, Inc., 623 F.3d 708, 717 (9th Cir. 2010).  In this instance, all class

26  members are entitled to the same relief under 15 U.S.C. § 1681n which applies to all the alleged

27  willful violations of the FACTA.  See Medrano v. WCG Holdings, Inc., No. SACV 07-05-6 JVS

28  (RNBx), 2007 WL 4592113, at *3 (C.D. Cal. Oct. 15, 2007) (finding typicality where

1  representative's claims were substantially identical to the claims of the proposed class).  Plaintiff

2  satisfies the typicality requirement.

3      4.   <u>Adequacy</u>

4      The named plaintiffs must fairly and adequately protect the interests of the class. Fed. R.

5  Civ. P. 23(a)(4).  In determining whether the named plaintiffs will adequately represent the class,

6  the courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any

7  conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

8  prosecute the action vigorously on behalf of the class?"  <u>Hanlon</u>, 150 F.3d at 1020.  "Adequate

9  representation depends on, among other factors, an absence of antagonism between

10  representatives and absentees, and a sharing of interest between representatives and absentees.

11  <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

12      Plaintiff contends that she is an adequate representative as there is not potential for a

13  conflict of interest.  Defendants to this action do not challenge the adequacy of Plaintiff as a class

14  representative.  The interests of Ms. Torres do not appear to differ from those of the class.

15  Although the class is very large, Ms. Torres has suffered the same injury as the unnamed class

16  members.  The Court finds that Plaintiff Cirena Torres can adequately represent the class.

17      Plaintiff seeks appointment of Chant Yedalian as class counsel arguing that he is highly

18  capable and experienced in class action litigation, including suits under the FACTA.   Mr.

19  Yedalian has submitted a declaration listing multiple actions and class actions which he has

20  litigated to enforce the FACTA.  (Decl. of Chant Yedalian ¶¶ 39, 40, ECF No. 13.)  Mr. Yedalian

21  has conducted extensive research of the FACTA and was one of the first attorneys in the nation

22  to prosecute violations of the FACTA.  (<u>Id.</u> at ¶¶ 42, 43.)  The Court finds that proposed class

23  counsel is qualified, competent, and has no known conflicts of interest with any of the class

24  members.

25      5.   <u>Rule 23(b)(3)</u>

26      To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or

27  fact common to class members predominate over any questions affecting only individual

28  members, and that a class action is superior to other available methods for fairly and efficiently

1  adjudicating the controversy."  Certification under Rule 23(b)(3) is appropriate "whenever the

2  actual interests of the parties can be served best by settling their differences in a single action."

3  Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

4  Federal Practice & Procedure § 1777 (2d ed.1986)).

5        **a.**     **Predominance**

6       "[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between

7  individual and common issues."  Alberto v. GMRI, Inc., 252 F.R.D. 652, 663 (E.D. Cal. 2008).

8  Where common questions present a significant aspect of the case and are able to be resolved for

9  all class members in a single action, the case can be handled on a representative rather than

10  individual basis.  Alberto, 252 F.R.D. at 663.

11       As discussed above the class members here have all been subjected to the same harm and

12  have the same damages available.  The common questions represent a significant portion of this

13  action and there should be few if any individual issues to be resolved.  The predominant issue to

14  be resolved here is whether Defendant willfully violated the FACTA by printing credit and debit

15  card expiration dates on customer receipts.  Therefore, the predominance inquiry is satisfied.

16        **b.**     **<u>Superiority</u>**

17       Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in

18  individually controlling the prosecution or defense of separate actions; (B) the extent and nature

19  of any litigation concerning the controversy already begun by or against class members; (C) the

20  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

21  and (D) the likely difficulties in managing a class action."  Where the parties have agreed to pre-

22  certification settlement (D) and perhaps (C) are irrelevant.  Amchem, 521 U.S. at 620.

23       The statutory damages in this action for each class member would range from $100 to

24  $1,000 per violation.   The parties are unaware of any concurrent litigation regarding the issues

25  raised in this action.  Absent any competing lawsuits, it is unlikely that other consumers have an

26  interest in controlling the litigation.  Moreover, the class members will be given the opportunity

27  to object at the fairness hearing.

28       The purpose of Rule 23(b)(3) is "to allow integration of numerous small individual

1   claims into a single powerful unit." Bateman, 623 F.3d at 722 (quoting Blackie v. Barrack, 524

2   F.2d 891, 899 (9th Cir. 1975).  In this instance, the actual harm to individual consumers will

3   most likely be small or difficult to prove, which is why there is a need for statutory damages to

4   compensate victims.  Bateman, 623 F.3d at 718.  Allowing this action to proceed as a class

5   action appears to be the superior method of adjudicating the controversy given the large number

6   of class members and amount of damages at issue for each class member.

### B.   Fairness, Adequacy, and Reasonableness of Proposed Settlement

8         Having determined that class treatment appears to be warranted, the Court addresses

9   Federal Rule of Civil Procedure 23(e)(2) which requires that any settlement in a class action be

10  approved by the court which must find that the settlement is fair, reasonable, and adequate.

11  Review of the proposed settlement of the parties proceeds in two phases.  True, 749 F.Supp.2d at

12  1062.  At the preliminary approval stage, the court determines whether the proposed agreement

13  is within the range of possible approval and whether or not notice should be sent to class

14  members.  Id. at 1063.  At the final approval stage, the court takes a closer look at the settlement,

15  taking into consideration objections and other further developments in order to make the final

16  fairness determination.  Id.

17        The court considers a number of factors in making the fairness determination including:

18  "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

19  litigation; the risk of maintaining class action status throughout the trial; the amount offered in

20  settlement; the extent of discovery completed and the stage of the proceedings; the experience

21  and views of counsel; the presence of a governmental participant;[1] and the reaction of the class

22  members to the proposed settlement."  Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at

23  1026).

24        When the settlement takes place before formal class certification, as it has in this

25  instance, settlement approval requires a "higher standard of fairness."  Lane, 696 F.3d at 819

26  (quoting Hanlon, 150 F.3d at 1026).  This more exacting review of class settlements reached

27

28  [1] Since there is no government participant in this action, this factor does not weigh in the Court's analysis.

1   before formal class certification is required to ensure that the class representatives and their

2   counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who

3   class counsel had a duty to represent."  Lane, 696 F.3d at 819.

4         1.    Terms of the Settlement Agreement

5         The settlement class will consist of all consumers who were provided with an

6   electronically printed receipt which included the expiration date of the consumer's credit card

7   after making a purchase at any Pet Extreme or Discount Pet store during the period of November

8   2, 2011 to October 18, 2013.

9         Defendant shall establish a settlement fund in the amount of $475,000.00 ("gross

10  settlement fund").  All settlement administration costs, except for the postage charges for the

11  distribution of Pet Extreme Gift Cards, will be paid for separately by Pet Extreme and will not be

12  deducted from the gross settlement fund.  The first $57,645.00 in postage charges will not be

13  deducted from the gross settlement fund, but will be paid separately by Pet Extreme.  Class

14  counsel attorney fees and costs, an incentive payment to the class representative, settlement

15  website programming costs, and any postage charges in excess of $57,645.00 will be deducted

16  from the gross settlement amount, and the remaining funds ("net settlement amount") will be

17  divided by the total number of settlement class members who submit a valid and timely claim.

18        Each settlement class member that submits a valid and timely claim will be mailed a Pet

19  Extreme Gift Card.  The amount of the gift card will be determined by dividing the total number

20  of settlement class members who submit a valid and timely claim by the net settlement fund.

21  The maximum amount of the gift card that any settlement class member would receive is $45.00.

22  Each settlement class member may only submit one claim regardless of the number of credit

23  purchases they made during the period of November 2, 2011 to October 18, 2013.

24        The Pet Extreme Gift Card will not expire and is fully transferrable.  The gift card may be

25  used to make purchases at any Pet Extreme or Discount Pet store, but is not redeemable for cash.

26  If any of the net settlement fund remains after all settlement class members who submit valid

27  claim forms receive Pet Extreme Gift Cards, the residual funds will be distributed to charities.

28        Defendant Pet Extreme shall implement a written FACTA compliance policy which

states that it will not print more than the last five digits of credit or debit card numbers on receipts and the expiration date of credit or debit cards will not be printed on any receipt provided to a consumer for purchases at any Pet Extreme or Discount Pet store.

Since Defendant does not have information to determine the identifies of the consumers who made purchases from the period of November 2, 2011 to October 18, 2013, notice of the settlement shall be provided in the following manner: 1) each Pet Extreme and Discount Pet store shall post the Short-Form Notice-1 in a conspicuous location at the front door and at each register for a period of at least 180 days; 2) each Pet Extreme and Discount Pet store shall post the Short-Form Notice-2 on the Community Board for a period of at least 180 days.  The Short-Form Notice shall include the settlement website address and a toll-free number which settlement class members may contact to obtain further information.

During this same period of time, a notice of settlement will be posted on homepage of Pet Extreme's website.  The notice will state "Notice of Class Action Settlement" in boldface font and will contain a hyperlink to the Settlement website.  There will also be a viewable and printable long-form notice on the settlement website containing a description of the settlement terms.

Settlement class members will have 180 days from the date the Short-Form Notice is first posted at Pet Extreme and Discount Pet stores to submit a claim form.  Claim forms may be submitted by mail or by facsimile.  There will also be an electronic version of the claim form that can be submitted through the settlement website.  To submit a valid claim, the class member must produce evidence that he or she received a customer receipt at any time during the period of November 2, 2011 to October 18, 2013 that displays the expiration date of his or her credit or debit card.  Proof may consist of the original or a copy of the receipt showing a transaction made during the period of November 2, 2011 to October 18, 2013 or a credit or debit card statement showing a transaction made at any Pet Extreme or Discount Pet store during the period of November 2, 2011 to October 18, 2013.

Settlement class members will have 60 days from the date the Short-Form Notice is first posted by Pet Extreme to exclude themselves from or object to the settlement.  The settlement

1   agreement shall be self-administered by the parties.  All administration expenses, except for the

2   postage charges for mailing the Pet Extreme Gift Cards, will be paid for by Pet Extreme and will

3   not be deducted from the settlement fund.

4        The class representative is seeking $5,000.00 as compensation for her services and class

5   counsel is seeking $118,750.00 in attorney fees and costs.  Defendant is not admitting to any

6   liability, culpability or wrongdoing by the settlement.

7        2.    Preliminary Determination of Adequacy

8        "To determine whether a settlement falls within the range of possible approval, a court

9   must focus on substantive fairness and adequacy, and "consider plaintiffs' expected recovery

10  balanced against the value of the settlement offer."  Lusby v. Gamestop, Inc., 297 F.R.D. 400,

11  415 (N.D. Cal. 2013) (quoting In re Tableware Antitrust Litig., 484 FSupp.2d 1078, 1080 (N.D.

12  Cal. 2007)).  "If the proposed settlement appears to be the product of serious, informed, non-

13  collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

14  treatment to class representatives or segments of the class, and falls within the range of possible

15  approval, then the court should direct that the notice be given to the class members of a formal

16  fairness hearing."  In re Tableware Antitrust Litigation, 484 FSupp.2d at 1079 (quoting Manual

17  for Complex Litigation, Second § 30.44 (1985)).

18        The parties have engaged in discussions, negotiations, correspondence, factual and legal

19  investigation and research and careful evaluation of the strengths and weaknesses of the case.

20  (ECF No. 13 at ¶ 20, 22.)  This agreement appears to be the result of vigorous arms-length

21  bargaining.  The parties vigorously dispute the class certification and whether printing the

22  expiration date of the cards on the receipts was a willful violation of the FACTA.  However, the

23  parties have considered the risks inherent in continuing to litigate the action and have found that

24  settlement is appropriate.

25        The settlement agreement provides a settlement fund of $475,000.00.  The statutory

26  damages in this action can range from $100.00 to $1,000.00 for each violation.  Each class

27  member that submits a valid and timely claim form will receive a gift card worth up to $45.00.

28  The gift cards are transferrable and do not expire.  To the extent that any class member accrued

actual damages they have the ability to opt out of the settlement.   Further, Pet Extreme has agreed to implement a written policy to ensure that its stores comply with the FACTA by no longer printing the expiration date of credit and debit cards on receipts.  The benefit that the class members will receive is not insubstantial.  The Court finds that the settlement falls within the reasonable range.

### a.   Class Representative Enhancement Payment

The Court is concerned with the $5,000.00 payment to the class representative.  This seems excessive in relation to the amount that the unnamed class members will be receiving.  Plaintiff has not set forth any information as to the amount of time that she devoted to this action, or that she made any personal sacrifices on behalf of the class.  At the fairness hearing, based upon the detailed evidence of Plaintiff's actual involvement in litigating this action, the Court will determine what portion of the amount sought is actually justified.

### b.   Attorney Fees

In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure.   In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011).  The usual range for common fund attorney fees are between 20-30%.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

Class counsel is seeking $118,750.00 in attorney fees and costs which is 25% of the gross settlement amount.   In this instance, the parties are picking up the costs of settlement administration and Pet Extreme is to pay $57,645 in postage charges for distribution of the Pet Extreme Gift Cards.  Further, the settlement also includes the agreement that Pet Extreme shall implement a written policy to comply with the FACTA.  This brings the attorney fees below 25% of the gross settlement fund which is considered a reasonable fee.

The Court does note that this action was filed less than a year ago and Plaintiff has provided no information for the Court to determine if the fee is actually reasonable in relation to the number of hours that have been devoted to this action.  At the final approval hearing, the Court will employ the lodestar method as a cross check on the percentage method to ensure a

1   failure and reasonable result.  <u>Alberto</u>, 252 F.R.D. at 668.  Therefore, counsel is advised that in

2   submitting the final approval of class action settlement they will be required to provide a

3   thorough fee award petition that details the hours reasonably spent representing Plaintiff in this

4   action.

5          **c.      Notice**

6          Rule 23 requires that notice for any class certified under Rule 23(b)(3) must be "the best

7   notice that is practicable under the circumstances, including individual notice to all members

8   who can be identified through reasonable effort."  Fed. R. Civ. P. 23(b)(2)(B).  In this instance,

9   the parties are not able to identify the individuals that made purchases by credit card to provide

10  notice by mail.  For that reason, notice shall be provided by posting at the front door and at each

11  register at each location a notice stating:

12                              <u>LEGAL NOTICE</u>

13          If you received a credit card or debit card receipt from any Pet Extreme or
            Discount Pet store at any time during the period November 2, 2011 to October 18,
14          2013, a class action settlement may affect your rights, and you may be entitled to
            benefits, including one Pet Extreme Gift Card in an amount up to $45.00.
15
16  (ECF No. 11-1 at 13.)  The notice also includes a toll-free phone number and the settlement

17  website address.  (<u>Id.</u>)  Further, each store shall post on the community board a notice including

18  the above information, and in addition how to submit a claim form, to opt-out or to object to the

19  settlement.  (<u>Id.</u> at 15.)  The notice of settlement is also posted on Defendant's website.  Notice

20  by publication has been found to be adequate where identification of individual class members is

21  not possible through reasonable effort.  <u>In re Tableware Antitrust Litigation</u>, 484 F.Supp.2d at

22  1080.  The Court finds that this is the best notice that is practicable under the circumstances

    presented here.

23         **d.      Designated Charities**

24         The parties have designated charities to receive any residual funds that are not distributed

25  though the class action settlement.  Since most class action settlements result in unclaimed funds

26  a plan is required for distributing the unclaimed funds.  <u>Six Mexican Workers v. Arizona Citrus</u>

27  <u>Growers</u>, 904 F.2d 1301, 1305 (9th Cir. 1990).   The alternatives available are cy pres

28

1  distribution, escheat to the government, and reversion to the defendants.  Six Mexican Workers,

2  904 F.2d at 1307.

3        "Cy pres" distribution allows the distribution of unclaimed funds to indirectly benefit the

4  entire class.  Id. at 1305.  This requires the cy pres award to qualify as "the next best

5  distribution" to giving the funds directly to the class members.  Dennis v. Kellogg Co., 697 F.3d

6  858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate cy pres

7  beneficiary[,]" there must be "a driving nexus between the plaintiff class and the cy pres

8  beneficiary."  Dennis, 697 F.3d at 865 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, (9th Cir.

9  2011)).  The choice of distribution options should be guided by the objective of the underlying

10  statute and the interests of the class members.  Six Mexican Workers, 904 F.2d at 1307.

11        The purpose of the FACTA is "to require that consumer reporting agencies adopt

12  reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

13  insurance, and other information in a manner which is fair and equitable to the consumer, with

14  regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . .

15  ."  15 U.S.C. § 1681(b).  The purpose of the statute generally relates to consumer protection.

16  Plaintiffs in this action are individuals who shop at Pet Extreme or Discount Pet which would

17  lead the Court to conclude that they have an interest in animals.  Therefore, the Court finds that

18  in order to meet the requirement that there be "a driving nexus between the plaintiff class and the

19  cy pres beneficiary" any charity that advances consumer protection or the Plaintiffs' interest in

20  animals would be an appropriate selection.

21        In this instance, the parties have selected Ventana Wildlife Society, Fresno Wildlife

22  Rescue and Rehabilitation Service, Wildlife Care Association, Miss Winkles Pet Adoption, and

23  Friends of Turlock Animal Shelter which the Court finds to have a sufficient nexus to the

24  interests of the Plaintiffs to serve as cy pres beneficiaries.  However, Defendant has also selected

25  California State Stanislaus Scholarships and the Turlock Police Activities League as cy pres

26  beneficiaries.  While these are worthy charities, they do not have the driving nexus that is

27  required to be an appropriate cy pres beneficiary in this action.  Therefore, Defendants must

28  either select alternative beneficiaries that meet the nexus described herein or the Court will

1  determine appropriate distribution among charities that meet the required nexus.

2        Further, the Court has considered the location of the stores and charities that the parties

3  have selected as cy pres beneficiaries.  The parties have not selected any charities in the Stockton

4  or Livermore areas.  Defendants are advised that selection of charities that would serve the

5  Livermore and Stockton areas would ensure that the interests of the class members living in

6  those areas are served.

7                                        **VI.**

8                         **CONCLUSION AND RECOMMENDATION**

9        While there are portions of the settlement that need to be addressed as discussed herein,

10  the Court trusts that the deficiencies can be cured prior to the final fairness hearing in order to

11  ensure a fair, reasonable, and adequate settlement.  According, the Court preliminary finds that

12  the class meets the requisite certification standards, and the terms of the parties' settlement fall

13  within the range of possible approval.

14        Based on the foregoing, the Court HEREBY RECOMMENDS that:

15        1.    The Court grant preliminary approval of the proposed Settlement upon the terms

16              and conditions set forth in the Agreement.

17        2.    The Court certify the following Settlement Class for settlement purposes only:

18        a.    All consumers who, at any time during the period November 2, 2011 to October

19              18, 2013, were provided an electronically printed receipt at the point of a sale or

20              transaction at any Pet Extreme or Discount Pet store, on which receipt was printed

21              the expiration date of the consumer's credit card or debit card.

22        3.    The Court find that, for purposes of the Settlement, the above-defined Settlement

23              Class meets all of the requirements for class certification.  For purposes of the

24              Settlement, the requirements of Federal Rules of Civil Procedure 23(a) and

25              23(b)(3) are satisfied.

26        4.    The Court appoint Plaintiff Cirena Torres as the Class Representative for the

27              Settlement Class.

28        5.    The Court appoint attorney Chant Yedalian of Chant & Company A Professional

1    Law Corporation as Class Counsel for the Settlement Class.

2    6.    The Court approve the proposed manner of the notice of Settlement set forth in

3          the Agreement.  The Court also approve the size and contents of the Short-Form

4          Notice 1, Short-Form Notice 2, Full Notice, and Claim Form attached as Exhibits

5          1, 2, 3 and 4, respectively, to the Agreement.

6    7.    The Court find that the proposed manner of the notice of Settlement constitutes

7          the best notice practicable under the circumstances.

8    8.    The Court set a final approval and fairness hearing.

9          These findings and recommendations are submitted to the district judge assigned to this

10   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

11   (14) days of service of this recommendation, any party may file written objections to these

12   findings and recommendations with the Court and serve a copy on all parties.  Such a document

13   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

14   district judge will review the magistrate judge's findings and recommendations pursuant to 28

15   U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

16   time may waive the right to appeal the district judge's order.  Martinez v. Ylst, 951 F.2d 1153

17   (9th Cir.  1991).

18
19   IT IS SO ORDERED.

20   Dated:   **September 2, 2014**

     UNITED STATES MAGISTRATE JUDGE