1  Chant Yedalian, State Bar No. 222325
   (chant@chant.mobi)
2  CHANT & COMPANY
   A Professional Law Corporation
3  1010 N. Central Ave.
   Glendale, CA 91202
4  Phone: 877.574.7100
   Fax: 877.574.9411
5
   Counsel for Plaintiff
6  and the Settlement Class

7

8

9

10

11                        UNITED STATES DISTRICT COURT

12                        EASTERN DISTRICT OF CALIFORNIA

13

14  CIRENA TORRES, on behalf of herself and )   Case No.: 1:13-cv-01778-LJO-SAB
    all others similarly situated,          )
15                                          )   **NOTICE OF MOTION AND MOTION FOR**
                             Plaintiff,     )   **FINAL APPROVAL OF CLASS ACTION**
16                                          )   **SETTLEMENT**
    v.                                      )
17                                          )   [Filed concurrently with Declaration of Eric
    PET EXTREME, INC., and DOES 1           )   Gonsalves, Supplemental Declaration Of Eric
18  through 10, inclusive,                  )   Gonsalves, Declaration of Chant Yedalian,
                                            )   Declaration of Mohammad Walizadeh, and
19                           Defendants.    )   [Proposed] Order and Judgment, lodged herewith]
                                            )
20  ───────────────────────────────────────    **HEARING**
                                                Date:    January 14, 2015
21                                              Time:    10:00 a.m.
                                                Courtroom: 9 (6th Floor)
22                                              Judge: Hon. Stanley A. Boone

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on January 14, 2015 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Stanley A. Boone in Courtroom 9 (6th Floor), located at 2500 Tulare Street, Fresno, California 93721, Plaintiff, Cirena Torres, on behalf of herself and on behalf of the Settlement Class, will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order and Judgment granting final approval of the proposed class action settlement on the terms and conditions set forth in the Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement"), a copy of which is attached hereto as Exhibit 1,[1] as later partially modified by the Parties' Stipulation concerning amendments to Defendant's proposed charities (Dkt. #18) and the Court's Order thereon (Dkt. #19).

Plaintiff further moves the Court for an Order:

1.   Confirming its previous findings that the requirements for class certification, for settlement purposes, are satisfied;

2.   Certifying the Settlement Class for settlement purposes;

3.   Appointing Plaintiff Cirena Torres as the Class Representative for the Settlement Class;

4.   Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation as Class Counsel for the Settlement Class;

5.   Finding that the Settlement is fair, adequate and reasonable and complies with Rule 23(e) of the Federal Rules of Civil Procedure;

6.   Finding that the notice of Settlement directed to the Settlement Class members has been completed in conformity with the Court's orders;

7.   Binding all Settlement Class members who did not timely exclude themselves from the Settlement to the Agreement, including the releases contained in paragraphs 17 and 18 of the Agreement;

8.   Directing the Parties to effectuate all terms of the Agreement;

---

[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

9.  Providing that each of the Parties is to bear its own fees and costs except as expressly provided in the Agreement or in the Court's order(s) on Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative; and

10. Dismissing the Action with prejudice in accordance with the terms of the Agreement; however, the Court shall retain continuing jurisdiction: (i) to decide the Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative and make and enter an order(s) wherein the Court will determine the amount of attorney's fees and costs to award to Class Counsel and the amount of the incentive payment to award to the Class Representative, and (ii) to interpret, implement and enforce the Settlement, and all orders and judgment entered in connection therewith.

This Motion is based upon this Notice of Motion and Motion and Exhibit 1 attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED: December 12, 2014        CHANT & COMPANY
                                A Professional Law Corporation


                                By:   /S/ – Chant Yedalian
                                      Chant Yedalian
                                Counsel For Plaintiff
                                and the Settlement Class

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION……………………….………………………………………1

II.    FACTUAL SUMMARY……………………………………………………... 1

III.   SETTLEMENT DISCUSSONS……………………………………………….2

IV.   NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD………..3

     A.    No Opt-Outs…………………………………………………………..4

     B.    No Objections…………………………………………………………5

     C.    No Notice of Intention to Appear…………………………………………...5

V.    CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE GOVERNMENT OFFICIALS AND THEY HAVE NOT OBJECTED OR INTERVENED…………………………………………………………………...5

VI.   THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT…………………………..6

VII.  THE SETTLEMENT………………………………………………………….6

VIII. THE SETTLEMENT CLASS…………………………………………………10

     A.    Numerosity……………………………………………………...10

     B.    Commonality……………………………………………………11

     C.    Typicality……………………………………………………….12

     D.    Adequate Representation…………………………………………...13

     E.    Rule 23(b)(3) Requirements Are Met ………………………………….14

          1.    Predominance of Common Questions………………………………14

          2.    Superiority……………………………………………………15

IX.   THE TWO-STEP APPROVAL PROCESS……………………………………18

X.    THE PRESUMPTION OF FAIRNESS…………………………………………...18

//

//

**Page**

XI.    THIS SETTLEMENT IS FAIR AND REASONABLE…………………………………..19

        A.    Risks of Continuing Litigation……………………………………………………20

               1.    "Willfulness"…………………………………………………………………20

               2.    Class Certification…………………………………………………………20

        B.    Substantial Benefits of Settlement Compared to Risks of Continued Litigation….21

        C.    Agreement Provides That Change Of Law Before Final Approval
               of Settlement Will Not Compromise Settlement Class Members' Benefits……….23

        D.    The Settlement Is The Product of Extensive Arm's-Length Negotiations………..24

        E.    The Findings Made In This Court's Orders Granting Preliminary Approval
               Likewise Support The Grant of Final Approval……………………………………..24

        F.    The Lack Of Any Opt-Outs, Objections And Requests To Appear Also
               Supports The Grant of Final Approval………………………………………………25

XII.    CONCLUSION…………………………………………………………………………25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Federal Cases</u>                                                                                              Page(s)

3

*Abels v. JBC Legal Group, P.C.*
   227 F.R.D. 541 (N.D. Cal. 2005)……………………………………………………………13

*Amchem Products Inc. v. Woodward*
   521 U.S. 591 (1997)………………………………………………………………………16

*Armstrong v. Board of School Directors of the City of Milwaukee*
   616 F.2d 305 (7th Cir. 1980)………………..………………………………………………18

*Bateman v. American Multi-Cinema, Inc.*
   623 F.3d 708 (9th Cir. 2010)………………………………………14, 15, 16, 17, 20, 21, 23

*Blackie v. Barrack*
   524 F.2d 891 (9th Cir. 1975)………………………………………………………………11

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
   917 F.2d 1171 (9th Cir. 1990)…………………………………….......................12

*Chalk v. T-Mobile USA, Inc.*
   560 F.3d 1087 (9th Cir. 2009)……………………………………………………………15

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992)……………………………………………………………...18

*Craft v. County of San Bernardino*
   624 F.Supp.2d 1113 (C.D. Cal. 2008)…………………………………….................22-23

*Deposit Guar. Nat'l Bank v. Roper*
   445 U.S. 326 (1980)…………………………………………………........................16

*Edwards v. First Am. Corp.*
   610 F.3d 514, 517 (9th Cir. 2010)…………………………………………………………24

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974)………………………………..…………………………………10, 16

*Elkins v. Equitable Life Ins. of Iowa*
   1998 WL 133747 (M.D. Fla. 1998)………………………………………………………17

*Evon v. Law Offices of Sidney Mickell*
   688 F.3d 1015 (9th Cir. 2012)……………………………………………………………23

*First Am. Fin. Corp. v. Edwards*
   131 S.Ct. 3022 (June 20, 2011)……………………………………………………………24

*First Am. Fin. Corp. v. Edwards*
   132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………………………24

*Hammon v. Barry*
   752 F.Supp 1087 (D. D.C. 1990)…………………………………….......................18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

**Page(s)**

*Hanlon v. Chrysler Corp.*
    140 F.3d 1011 (9th Cir. 1998)……………………………………………11, 12, 14-15

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)………………………………………………………12

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985)………………………………......................13

*In re Alcoholic Beverages Litigation*
    95 F.R.D. 321 (D.C. N.Y. 1982)………………………………….....................11

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)…………………..…………………………...22

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)……………………………………...............18

*In re Computer Memories Sec. Litig.*
    111 F.R.D. 675 (N.D. Cal. 1986)…………...……………………………………11

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)……………………………….……………22

*In re Omnivision Techs., Inc.*
    559 F.Supp.2d 1036 (N.D. Cal. 2008)……………………………………..6, 25

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)…………...…………………………….............18

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
    295 F.R.D. 438 (C.D. Cal. 2014)…………………………………………….22

*Jordan v. Los Angeles*
    669 F.2d 1311 (9th Cir. 1982)…………...…………………...............10, 11

*Kesler v. Ikea U.S., Inc., et al.*
    2008 WL 413268 (C.D. Cal. 2008)…………................................12, 13

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978)………………………………………………13

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)……………………………………13-14, 15

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    834 F.2d 677 (7th Cir. 1987)…………………………………………...18

*Martin v. Pacific Parking Systems, Inc.,*
    2012 WL 2552694 (C.D. Cal. 2012)……………..…………………………21

**Page(s)**

*Medrano v. WCG Holdings, Inc.*
   2007 WL 4592113 (C.D. Cal. 2007)…………………………...………………...12, 13

*Murray v. GMAC Mortgage Corp.*
   434 F.3d 948 (7th Cir. 2006)…………………………………………….…...15-16

*Murray v. GMAC Mortgage Corp. ("Murray II")*
   2007 WL 1100608 (N.D. Ill. 2007)…………………………………….......................13, 17

*Nat'l Rural Telecomm. Coop. v. DirecTV*
   221 F.R.D. 523 (C.D. Cal. 2004)……………………………………….………..6, 19, 25

*Officers for Justice v. Civil Service Commission of*
*City and County of San Francisco*
   688 F.2d 615 (9th Cir. 1982)…………………………………………...…19-20, 22

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985)……………………………………………………………16

*Priddy v. Edelman*
   883 F.2d 438 (6th Cir. 1989)…………………………………………........................18

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
   79 F.R.D. 571 (E.D. Pa. 1978)………………………………………….......................18

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003)……………………………………………….........10, 19

*Steinberg v. Carey*
   470 F.Supp. 471 (S.D. N.Y. 1979)…………………………………………...19

*Strube v. American Equity Life Ins. Co.*
   226 F.R.D. 688 (M.D. Fla. 2005)…………..……………………………………17

*Tchoboian v. Parking Concepts, Inc.*
   2009 WL 2169883 (C.D. Cal. 2009)……...…………………………………11-13

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993)……………………………………………………...19

*Valentino v. Carter-Wallace*
   97 F.3d 1227 (9th Cir. 1996)…………………………………………………15

*Yokoyama v. Midland Nat'l*
   594 F.3d 1087 (9th Cir. 2010)…………………………………………………...15

*Zinser v. Accufix Research Institute, Inc.*
   253 F.3d 1188 (9th Cir. 2001)…………………………………………………...14

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

**Page(s)**

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") ………...…………………15, 17

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")………………………………………………...…..…*passim*

15 U.S.C. § 1681n..………………….……………………….…………………………2, 12, 15, 20

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23………………………………….……………………….……10, 16,

FRCP Rule 23(a)……………………….…………………….…...……………...10

FRCP Rule 23(a)(1)………………………….………………….………………...10

FRCP Rule 23(a)(2)………………….………………………….…...…….…...…11

FRCP Rule 23(a)(3)…………………….……………………….…..……………...12

FRCP Rule 23(a)(4)……………………….…………………………………….…...13

FRCP Rule 23(b)(3)………………………...…….…..........................10, 14, 15, 16, 17

FRCP Rule 23(b)(3)(A), (B) (C) and (D)…………………….……………….........16

FRCP Rule 23(e)……………………….……………………….....…....…..6, 18, 19, 20

**Other Authorities**

*Newberg on Class Actions*, 4th Ed…………..…………..…………………………18, 19

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

On September 23, 2014, this Court entered an Order granting preliminary approval of the proposed class action Settlement (Dkt. #19) and adopting, in full, the Findings and Recommendations of the Honorable Stanley A. Boone recommending preliminary approval of the class action Settlement (Dkt. #17).  As part of the same Order, the Court approved a plan of notice to be directed to Settlement Class members and set deadlines by which Settlement Class members may opt-out, object or request to be heard at the final approval hearing.  Dkt. #19, ¶¶ 1, 7, 8.

As explained in further detail below, notice to Settlement Class members has been provided in conformity with the Court's Orders, and no Settlement Class member has opted-out, objected or requested to be heard at the final approval hearing.

Plaintiff, Cirena Torres, on behalf of herself and on behalf of the Settlement Class, hereby respectfully moves the Court for an Order and Judgment granting final approval of the proposed class action Settlement.

## II.     FACTUAL SUMMARY

Plaintiff Cirena Torres is a customer of Pet Extreme, Inc. ("Pet Extreme").  Complaint ¶ 22.  Pet Extreme operates 10 retail stores in California which offer pet related goods and services for sale to the public.  Gonsalves Decl. ¶¶ 2-5.  These retail stores have signs and/or are otherwise designated with the name "Pet Extreme" or "Discount Pet."  *Id.* at ¶¶ 3-4.

On July 28, 2013, Ms. Torres made a purchase of pet related goods from a Pet Extreme retail store in Fresno, California.  Ms. Torres paid for her purchase with her credit card.  The customer receipt which Ms. Torres was provided at the point of sale had the expiration date of her credit card, the brand of the card (i.e., Visa, etc.), and the last four digits of her card number printed on the receipt.  Complaint ¶ 32.

During the Settlement Class period in this case, which spans from November 2, 2011 to October 18, 2013, all electronically printed customer receipts provided to customers at all Pet Extreme store locations displayed the respective cardholder's credit or debit card expiration date.  Gonsalves Decl. ¶¶ 6-7.  During this period, Pet Extreme printed a total of 853,314 electronically

printed credit and debit card customer receipts which display the respective cardholder's expiration date.  Gonsalves Decl. ¶ 10.  Of the 853,314 receipts, 235,288 transactions were made with a unique credit or debit card (*i.e.*, one customer), and the remaining 618,026 receipts were with repeated cards (*i.e.*, additional transactions by that unique card or customer).  *Ibid.*

On October 18, 2013, Pet Extreme received a letter from Plaintiff's counsel entitled "Notice To Cease And Desist FACTA Violations; And Notice Of Class Action Lawsuit," together with an enclosed copy of the Complaint in this case.  Gonsalves Decl. ¶ 8.  It thereafter ceased printing credit and debit card expiration dates on all electronically printed customer receipts at all of its retail stores.  *Id.* at ¶ 9.

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681(c)(g)(1).  A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs.  15 U.S.C. § 1681n.

Ms. Torres commenced this action on November 2, 2014 by filing a proposed class action complaint against Pet Extreme.  Plaintiff's Complaint alleges, *inter alia*, that Pet Extreme willfully violated FACTA by printing the expiration date of credit and debit cards on electronically printed customer receipts printed at a point of sale or transaction.  Pet Extreme denies any wrongdoing or violation of FACTA.

III.    SETTLEMENT DISCUSSONS

Between October 2013 to May 2014, the Parties participated in extensive settlement discussions and exchanged information to facilitate those discussions.  In May 2014, the Parties signed a Memorandum Of Understanding Of Settlement ("MOU") through which they agreed to a class-wide settlement of this action.  The Parties promptly informed the Court of the MOU as well of the fact that there remained issues to work out, including the preparation of a long-form

settlement agreement, including the Short-Form Notice to the Settlement Class (and the locations within each store where it will be placed), the Full Notice to the Settlement Class and the Claim Form.  Dkt. No. 9.  The Parties also explained to the Court that the MOU provides that if the Parties cannot agree on these remaining issues, the MOU shall nonetheless be fully enforceable by the Court and the Court shall resolve any such differences.  *Ibid.*

Between May 2014 to July 2014, the Parties continued to work on the remaining issues. They reached agreement as to all issues in July 2014, and the product of all of the negotiations and exchanges between October 2013 and July 2014 resulted in the Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement"), a copy of which is attached hereto as Exhibit 1.[2]

In light of the Court's Findings and Recommendations Recommending Preliminary Approval Of Class Action Settlement, which approved of Plaintiff's designated *cy pres* charities but not all of Defendant's designated *cy pres* charities (Dkt. #17 at pp. 13:21-14:6), the Parties continued to confer and entered into a Stipulation concerning amendments to Defendant's proposed charities (Dkt. #18), which was approved by the Court (Dkt. #19).

## IV.   NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD

Pursuant to the Court-approved notice plan, notice was to be provided to Settlement Class members in the following ways:

**Short-Form Notice**

For a period of at least 180 days (180 days is the duration of the claims period), at each Pet Extreme and Discount Pet Store, Pet Extreme shall (i) conspicuously post Short-Form Notice 1 (which will be in the form and not smaller than the size attached to the Agreement as Exhibit 1) at the front door and at each register, and (ii) conspicuously post Short-Form Notice 2 (which will be in the form and not smaller than the size attached to the Agreement as Exhibit 2) on the Community Board of each store.   Agreement ¶ 13(a).  The Short Form Notice shall include the

---

[2] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

Settlement Website address and a toll-free telephone number which Settlement Class members may use to obtain further information.

### Pet Extreme Website Notice

Pet Extreme will also post a notice of the settlement on the homepage of its website, www.petextreme.com.   Agreement ¶ 13(b).   The notice will state "Notice of Class Action Settlement" in boldface font and will contain a hyperlink to the Settlement Website, allowing users to click through to the Settlement Website.  *Ibid.*

### Settlement Website Notice

Class Counsel will also provide a viewable and printable on-line long-form notice ("Full Notice"), which will be in the form attached to the Agreement as Exhibit 3, via a Settlement Website containing a description of the settlement terms.  Agreement ¶ 12(c).

### Full Notice and Claim Form

The Settlement Website will also provide, free of charge, viewable, printable, and downloadable copies of relevant documents, including the Full Notice and Claim Form.   Further, Settlement Class members also have the option of submitting their claim through the Settlement Website, by completing and submitting an electronic version of the Claim Form on the internet through the Settlement Website.  Agreement ¶ 12(c).

### Declarations From the Parties Concerning Compliance With Notice Plan

Filed concurrently with this Motion are the Supplemental Declaration Of Eric Gonsalves, and the Declaration of Chant Yedalian which establish that notice to the Settlement Class has been provided and (for the ongoing purpose of claims submission) continues to be provided in conformity with the Court-approved notice plan.  Supp. Gonsalves Decl. ¶¶ 2-4; Yedalian Decl. ¶¶ 25-32.

### A.     No Opt-Outs

Settlement Class members were provided a 60-day opt-out period after the date Short-Form Notice is first posted by Pet Extreme, to exclude themselves from the Settlement (the "Opt-Out Deadline").  Agreement  ¶ 15(a).

This opt-out period expired on November 28, 2014.  Yedalian Decl. ¶ 26.

1  No Settlement Class member opted-out during the opt-out period.  Yedalian Decl. ¶ 27;

2  Walizadeh Decl. ¶ 3.

3  **B.** **No Objections**

4  Settlement Class members were provided a 60-day period after the date Short-Form Notice

5  is first posted by Pet Extreme, to object to the terms of the Settlement.  Agreement ¶ 16(a).

6  This objection period expired on November 28, 2014.  Yedalian Decl. ¶ 28.

7  During the objection period, no Settlement Class member objected to the Settlement.

8  Yedalian Decl. ¶ 29; Walizadeh Decl. ¶ 3.

9  **C.** **No Notice of Intention to Appear**

10  In addition to allowing Settlement Class members an opportunity to opt-out or object,

11  Settlement Class members were also provided an opportunity to request permission to appear and

12  speak at the final approval hearing.  Dkt #11-1 at pp. 15 and 25.

13  Settlement Class members were provided until December 24, 2014 to make such a request.

14  Yedalian Decl. ¶ 31.

15  Thus far, no Settlement Class member requested permission to appear or speak at the final

16  approval hearing.  Yedalian Decl. ¶ 32; Walizadeh Decl. ¶ 3.

17  **V.   CAFA   NOTICE   HAS   BEEN   PROVIDED   TO   THE   APPROPRIATE**

18  **GOVERNMENT   OFFICIALS   AND   THEY   HAVE   NOT   OBJECTED   OR**

19  **INTERVENED**

20  On July 21, 2014, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, written

21  notice of this lawsuit and Settlement (including copies of relevant documents) was provided to the

22  appropriate government entities by sending notice to the CAFA Coordinators of the California

23  Office of the Attorney General and the U.S. Department Justice.  Walizadeh Decl. ¶ 2 and Ex. A.

24  No response or objection has been received from the CAFA Coordinators of either the

25  California Attorney General or U.S. Department of Justice (Walizadeh Decl. ¶ 3), nor have any of

26  them intervened as is demonstrated by the Court's records in this case.

27  //

28  //

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

VI. **THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT**

The lack of any opt-outs, objections and requests to appear provides further support for the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of the California Attorney General or U.S. Department of Justice likewise provides further support for the Settlement.

VII. **THE SETTLEMENT**

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Agreement.

A summary of the terms of the Settlement is as follows:

• This Settlement concerns consumer receipts printed during the period November 2, 2011 to October 18, 2013 which display the expiration date of the respective consumer's credit or debit card number. Agreement ¶ 10.

• The subject receipts were printed at all 10 of Pet Extreme's Pet Extreme and Discount Pet retail stores within the State of California. Gonsalves Decl. ¶¶ 6-7.

• For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "All consumers who, at any time during the period November 2, 2011 to October 18, 2013, were provided an electronically printed receipt at the point of a sale or transaction at any Pet Extreme or Discount Pet store, on which receipt was printed the expiration date of the consumer's credit card or debit card." Agreement ¶ 10.

• Pet Extreme will establish a settlement fund in the amount of $475,000 (the "Settlement Fund").  Except for postage charges for the distribution of Pet Extreme Gift Cards, all other settlement administration costs (including but not limited to card issuance, printing and envelope charges) will be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  The first $57,645 of postage charges incurred for the distribution of Pet Extreme Gift Cards shall be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  After subtracting from the Settlement Fund Class Counsel's attorney fees and costs, a service payment to the Class Representative, settlement website programming costs, and, to the extent applicable any postage charges in excess of $57,645 incurred for the distribution of Pet Extreme Gift Cards, the remaining amount (the "Net Settlement Fund") will be divided by the total number of Settlement Class members who submit a valid and timely claim to determine each claiming Settlement Class member's pro-rata share (the "Pro-Rata Share").  In the event the Pro-Rata Share is equal to or exceeds $45, each Settlement Class member who submits a valid and timely claim will be mailed a Pet Extreme Gift Card in the amount of $45, the value of which will be paid and deducted from the Net Settlement Fund.  In the event the Pro-Rata Share is less than $45, each Settlement Class member who submits a valid and timely claim will be mailed a Pet Extreme Gift Card in the amount of the Pro-Rata Share, to be paid and deducted from the Net Settlement Fund.  Each Settlement Class member may submit only one claim, regardless of whether they made one or more credit or debit card transactions during the period November 2, 2011 to October 18, 2013.  Agreement ¶ 12(a).

• Each Pet Extreme Gift Card shall be fully transferable to any and all other persons and shall not expire.  The Pet Extreme Gift Cards may be used to make the purchase of any good or service at any Pet Extreme or Discount Pet store, but may not be redeemed for cash.  Agreement ¶ 12(d).  Pet Extreme's stores have approximately 11,000 items of goods and services for sale.  Gonsalves Decl. ¶ 12.  The average total purchase price of goods by a customer during one transaction is around $32.00.  *Ibid.*  There are approximately 10,224 number of items that cost less than $45.00.  *Ibid.*

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

• If any residual funds from the Net Settlement Fund remain after payments are made to the Settlement Class members through the distribution of Pet Extreme Gift Cards, any and all such residual funds will be distributed to charities.  Agreement ¶ 12(b)(i).

• As part of the Settlement, Pet Extreme shall also implement a written FACTA compliance policy which states that it will not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any printed receipt provided to any customer that uses a credit or debit card to transact business at any Pet Extreme or Discount Pet store.  Agreement ¶ 12(e).

• Pet Extreme does not know, nor does Pet Extreme have access to any information which would enable it to determine, the identities of absent Settlement Class members.  Pet Extreme has information regarding customers' credit and debit card numbers, but not the identity or addresses of those customers.  Gonsalves Decl. ¶ 11.  The Parties therefore agreed upon the notice plan set forth in section IV., above, which, as also explained above, this Court approved as part of its Order granting preliminary approval of the Settlement.

• Settlement Class members will have 180 days from the date Short-Form Notice is first posted at Pet Extreme and Discount Pet stores to submit a claim for compensation from the Net Settlement Fund.  Agreement ¶ 12(b).   The claims period is ongoing and will end on March 27, 2015.  Settlement Class members may submit a Claim Form, (together with the required documentation) by postal mail or by facsimile.  Agreement ¶ 12(c).   Alternatively, Settlement Class members may submit a claim by completing and submitting an electronic version of the Claim Form (and uploading and submitting the required documentation) on the internet through the Settlement Website.  *Ibid.*   Each Settlement Class member may submit only one claim, regardless of whether they made one or more credit or debit card transactions during the period November 2, 2011 to October 18, 2013.  *Ibid.*  A valid claim will require that a Settlement Class member produce evidence that he or she received a customer receipt at any time during the period November 2, 2011 to October 18, 2013 that displays the expiration date of his or her credit or debit card.  Proof of claim may consist of the original or a copy of either (1) a customer receipt issued by Pet Extreme containing the expiration date of his or her credit or debit card showing that

he or she made a transaction at any Pet Extreme or Discount Pet store at any time during the period November 2, 2011 to October 18, 2013, or (2) a credit or debit card statement (which will be encouraged to be, in redacted form) showing that he or she made a transaction at any Pet Extreme or Discount Pet store at any time during the period November 2, 2011 to October 18, 2013.  Agreement ¶ 12(a).

- Settlement Class members had until 60 calendar days after the date Short-Form Notice is first posted by Pet Extreme, to exclude themselves from the Settlement (the "Opt-Out Deadline").  Agreement ¶ 15(a).   As explained in section IV.A., above, this opt-out period expired on November 28, 2014, and no Settlement Class member opted-out.  Yedalian Decl. ¶ 27.

- Settlement Class members had 60 calendar days after the date Short-Form Notice is first posted by Pet Extreme to object to the Settlement.  Any such objections were required to be filed with the Court and also served on Class Counsel and counsel for Pet Extreme.  Agreement ¶ 16(a).   As explained in section IV.B., above, this objection deadline expired on November 28, 2014, and no Settlement Class member objected to the Settlement.  Yedalian Decl. ¶ 29.

- The Settlement, including the claims process, will be self-administered by the Parties.  Agreement ¶ 12(b) and (c).

- Except for postage charges for the distribution of Pet Extreme Gift Cards, all other administration costs (including but not limited to card issuance, printing and envelope charges) will be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  The first $57,645 of postage charges incurred for the distribution of Pet Extreme Gift Cards shall be paid for separately by Pet Extreme and will not be paid from the Settlement Fund.  *Id.* at ¶ 12(b).

- Class Counsel will apply for an incentive (service) award of $5,000 to the named Plaintiff, to be paid from the Settlement Fund, to compensate Plaintiff for her services as the Class Representative.  Agreement ¶ 20.

- Class Counsel will apply to the Court for an award of $118,750 for fees and costs, to be paid from the Settlement Fund, that would compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, causing Pet Extreme to implement a new written policy concerning FACTA, and implementing the Settlement.  Agreement ¶ 21.

• Consistent with the Agreement and this Court's Orders, Class Counsel's motion for an award of attorney's fees and costs and the Class Representative's motion for service (or incentive) award was posted on the Settlement Website more than 30 calendar days before the final fairness hearing scheduled by the Court. Agreement ¶ 16(b) and (c). Any objection thereto must be filed with the Court and also served on Class Counsel and counsel for Pet Extreme no later than 21 calendar days before the fairness hearing, or as the Court otherwise directs. *Ibid.*

• The Agreement includes a term of "No Admission" such that "Nothing contained in th[e] Agreement, nor the consummation of the Settlement, is to be construed or deemed an admission of liability, culpability, or wrongdoing on the part of any of the Parties." *Id.* at ¶ 28.

## VIII.   THE SETTLEMENT CLASS

For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "All consumers who, at any time during the period November 2, 2011 to October 18, 2013, were provided an electronically printed receipt at the point of a sale or transaction at any Pet Extreme or Discount Pet store, on which receipt was printed the expiration date of the consumer's credit card or debit card." Agreement ¶ 10.

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

### A.   <u>Numerosity</u>

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[3]

---

[3] "Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible. In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Jordan*, *supra*, 669 F.2d at 1319.

1    In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64,

2    and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that

3    the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a

4    class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic*

5    *Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111

6    F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number

7    of class members, but demonstrated that class would "obviously be sufficiently numerous").

8    Here, the 235,288 transactions made with a unique credit or debit card (Gonsalves Decl. ¶

9    10) demonstrates that the sheer number of class members easily surpasses the class sizes in *Jordan*

10   which the Ninth Circuit deemed satisfied the numerosity requirement.  The fact that, by the very

11   nature of the Settlement Class, its members are unknown and cannot be readily identified, further

12   dictates that joinder is impracticable.  *Jordan*, 669 F.2d at 1319-1320.

13      **B.    Commonality**

14   Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This

15   commonality requirement must be "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d

16   1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule.

17   The existence of shared legal issues with divergent factual predicates is sufficient, as is a common

18   core of salient facts coupled with disparate legal remedies within the class."  *Ibid*.  Where a class is

19   united by a common interest in determining whether a defendant's broad course of conduct is

20   actionable, commonality is not defeated "by slight differences in class members' positions."

21   *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  Commonality cannot be disputed here.

22   All class members share two common legal questions – whether Pet Extreme violated

23   FACTA by printing the expiration date of debit and credit cards on receipts, and whether its

24   practice of doing so was "willful."  None of the relevant questions relates to the conduct of the

25   class members, but rather all focus on Pet Extreme's conduct and culpability in violating FACTA.

26   See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition

27   for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-

28   80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

1  that the class members are entitled to statutory damages.  Moreover, whether [defendant] violated

2  FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG*

3  *Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts

4  across the class.  Each member of the proposed class received a non-compliant receipt from

5  [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL

6  413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim

7  are nearly, if not entirely, identical.  There is a common core of salient facts across the class.  Each

8  member of the proposed class received a non-compliant receipt from IKEA after the December 4,

9  2006 FACTA compliance deadline.  The overriding legal issue is whether IKEA's noncompliance

10  was willful, so that the class members are entitled to statutory damages.")

11       **C.    <u>Typicality</u>**

12       Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ...

13  of the class."  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those

14  of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

15  Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is

16  enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently

17  parallel to insure a vigorous and full presentation of all claims for relief.'"  *Cal. Rural Legal*

18  *Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).  Moreover,

19  typicality refers to the "nature of the claim … of the class representative, and not to the specific

20  facts from which it arose or the relief sought."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

21  (9th Cir. 1992).  The test of typicality is thus "whether other members have the same or similar

22  injury, whether the action is based on conduct which is not unique to the named plaintiffs, and

23  whether other class members have been injured by the same course of conduct."  *Ibid*.

24       Here, Plaintiff and all other class members allege the same injury, violation of their

25  FACTA rights resulting from the same course of conduct — the printing of the expiration date of

26  their card number on credit or debit card receipts.  Accordingly, this lawsuit is based on conduct

27  which is not unique to Plaintiff, but on standardized, uniform conduct that is common to all class

28  members.  Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is

1   sought for all class members for Pet Extreme's "willful" violation of FACTA.  Accordingly, the

2   typicality requirement is satisfied.  *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding

3   that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the

4   claims of the proposed class members-namely, he alleges that [defendant] issued him a

5   noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3

6   (same); *Kesler*, 2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL

7   1100608 *5 (N.D. Ill. 2007) ("Murray II") (typicality satisfied where, despite minor factual

8   discrepancies, all putative class members had "the same essential characteristics"); *In re Activision*

9   *Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material

10  variation among class members is the amount of damages to which each member is entitled" and

11  that "[s]uch differences are insufficient to defeat class certification.")

12          **D.**     **Adequate Representation**

13          Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

14  interests of the class."  Representation is adequate if (1) class counsel is qualified and competent

15  and (2) the class representative and his or her counsel are not disqualified by conflicts of interest.

16  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

17          Here, there are no conflicts of interest between Plaintiff and Settlement Class members.

18  Plaintiff and each class member assert identical claims for statutory damages arising from the

19  same facts, *i.e.*, Pet Extreme's printing of the expiration date of the respective credit or debit card

20  on receipts.  Thus, there is no potential for conflicting interests in this action.  *Abels v. JBC Legal*

21  *Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff

22  and class members arise from defendants' use of form letters allegedly violating the Fair Debt

23  Collection Practices Act).  Moreover, there is no basis for asserting against Plaintiff any unique

24  defenses that Pet Extreme could not assert against any other Settlement Class member.  Nor is

25  there any basis to suggest that Plaintiff lacks sufficient zeal or competence.

26          Nor are their any conflicts with Plaintiff's counsel.  Plaintiff is represented by highly

27  capable and competent counsel experienced in class action litigation, including FACTA lawsuits.

28  Yedalian Decl. ¶¶ 33-47.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

*Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### E.       Rule 23(b)(3) Requirements Are Met

The Parties seek certification pursuant to Rule 23(b)(3), which authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FRCP 23(b)(3).  Rule 23(b)(3)'s predominance and superiority factors are satisfied.

### 1.       Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication."  *Hanlon*, 150 F.3d at 1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy."  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether Pet Extreme violated FACTA "willfully" is the central issue that clearly predominates over any individual issues.  Whether Pet Extreme did so depends upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages.  As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all class members' claims involve the very same conduct by Pet Extreme—the printing of receipts which contain the credit or debit card's expiration date.

"When common questions present a significant aspect of the case and they can be resolved

1    for all members of the class in a single adjudication, there is clear justification for handling the

2    dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal

3    quotation marks omitted).

4              **2.    Superiority**

5              To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court

6    must compare a class action with alterative methods for adjudicating the parties' claims.  Lack of a

7    viable alternative to a class action necessarily means that a class action satisfies the superiority

8    requirement.    "[I]f  a  comparable  evaluation  of  other  procedures  reveals  no  other  realistic

9    possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartender*

10   *Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996)

11   ("a class action is a superior method for managing litigation if no realistic alternative exists").

12             In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held

13   that a class action met the superiority requirements of Rule 23(b)(3) where class members could

14   recover, at most, damages in the amount of $1,330.  Here, class members can recover, at most,

15   statutory  damages  in  an  amount  between  $100  and  $1,000  per  violation.    As  in

16   *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual

17   sums.…  If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as

18   individuals because of the disparity between their litigation costs and what they hope to recover.

19   'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate

20   individually.'"  *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the

21   proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir.

22   2010);  ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA,*

23   *Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009)  ("policy at the very core of the class action mechanism

24   is to overcome the problem that small recoveries do not provide the incentive for any individual to

25   bring a solo action prosecuting his or her rights").  In *Murray v. GMAC Mortgage Corp.*, 434 F.3d

26   948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[4], the

27

28   [4] "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same
     statutory damages provision, see 15 U.S.C. § 1681n." *Bateman, supra*, 623 F.3d at 715.

1  Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which

2  the potential recovery is too slight to support individual suits, but injury is substantial in the

3  aggregate."

4      The Supreme Court has similarly held.  *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797,

5  809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs

6  would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l

7  Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs

8  totaled $1,006.00.  Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a

9  central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No

10  competent attorney would undertake this complex antitrust action to recover so inconsequential an

11  amount.  Economic reality dictates that petitioner's suit [involving individual damage of $70]

12  proceed as a class action or not at all").

13      In sum, as the Ninth Circuit explained in another FACTA case, the purpose of Rule

14  23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit."

15  *Bateman*, 623 F.3d at 722.

16      The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are

17  satisfied here.

18      Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily,

19  these factors are (A) the interest of class members in individually controlling the prosecution of

20  separate actions; (B) the extent and nature of any litigation concerning the controversy already

21  commenced by other class members; (C) the desirability or undesirability of concentrating the

22  litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in

23  the management of a class action.  However, when a court reviews a class action settlement, the

24  fourth factor does not apply.  In deciding whether to certify a settlement class action, a district

25  court "need not inquire whether the case, if tried, would present intractable management

26  problems."  *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  The remaining

27  factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

28

- 16 -

First, class members have no particular interest in individually controlling the prosecution of separate actions.  Statutory damages cannot exceed $1,000, and the fact of the matter is that there is no other known separate action filed or prosecuted by any other class members. Moreover, any Settlement Class member who desired to pursue actual damages could have opted out of the Settlement.

Second, and as explained above, the Parties are not aware of any other litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because all of the named parties, including Pet Extreme, reside in California and the alleged FACTA violations involve Pet Extreme's stores in California and within this district.  Moreover, the parties have reached a Settlement.  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Settlement Class Members in this case.  The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

> "This is a case where class certification presents the most efficient means of adjudicating the controversy.  The class is numerous but the potential recovery for each class member is quite small.  Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100-or that they could find counsel willing to represent them." *Murray II*, 2007 WL 1100608 *7.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations.  *Bateman*, 623 F.3d at 718.  As the Ninth Circuit has also explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

IX.     **THE TWO-STEP APPROVAL PROCESS**

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court.  FRCP Rule 23(e).  This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections.  *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)).

This Court has already performed the first step, having granting preliminary approval of the proposed Settlement on September 23, 2014 (Dkt. #19), and this Motion concerns the second step.

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.

X.      **THE PRESUMPTION OF FAIRNESS**

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that the negotiations were conducted in good faith.  *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation. *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

## XI.      THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and final approval should be granted.  No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *Staton*, *supra*, 327 F.3d at 959.   "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole."  *Staton*,  327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that

narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest.  *Staton*, 327 F.3d at 961.  Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A.   Risks of Continuing Litigation

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery.  Yedalian Decl. ¶ 5.

#### 1.   "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that Pet Extreme engaged in "willful" conduct.  However, Pet Extreme has vigorously denied that its conduct was willful.  Yedalian Decl. ¶ 7.  In contrast, Plaintiff believes, among other things, that the printing of expiration dates was reckless and the result of a lack of adequate measures to safeguard consumer rights.  *Ibid.*

Regardless of how strongly the Parties feel about the merits, the Parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to the particular facts of this case.  Yedalian Decl. ¶ 7.

#### 2.   Class Certification

The Parties have sharply divergent positions on class certification in this case, absent a settlement.  Pet Extreme has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment.  Agreement ¶ 3.

Plaintiff believes that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another FACTA case, strongly supports certification in this case.  Yedalian Decl. ¶ 9.

1    Yet, absent a settlement, class certification remains a hotly contested matter in this case,

2 and there are risks attendant in continued litigation of these issues, including, at a minimum,

3 delays and potential appeals.  Yedalian Decl. ¶ 10.

4    For example, even after the Ninth Circuit's decision in *Bateman*, one District Court within

5 the Central District denied class certification in a FACTA case, *Martin v. Pacific Parking Systems,*

6 *Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012).

7    In sum, while Plaintiff feels strongly about certification in this case, *Martin* is an example

8 of a FACTA case demonstrating the risks inherent in certification, including, at a minimum,

9 delays and potential appeals.  Yedalian Decl. ¶ 12.

10    **B.**    **Substantial Benefits of Settlement Compared to Risks of Continued Litigation**

11    The Settlement provides for substantial benefits.

12    The Settlement establishes a Settlement Fund in the amount of $475,000 plus an additional

13 up to $57,645 of postage charges for the distribution of Pet Extreme Gift Cards to be paid for

14 separately by Pet Extreme and not from the Settlement Fund.  Additionally, other settlement

15 administration costs (including but not limited to card issuance, printing and envelope charges,

16 and posting of notices on location at the stores) will be paid for separately by Pet Extreme and will

17 not be paid from the Settlement Fund.  Further, the Parties have agreed to self-administer the

18 Settlement and claims process, which would typically require payment to a settlement

19 administrator estimated at $40,000.  Yedalian Decl. ¶ 14.

20    Further, the value of the Pet Extreme Gift Card is considerable in that it is 45% of the

21 minimum statutory damages ($100) available for a willful violation of FACTA.  Although

22 compared to the maximum possible recovery of $1,000 in statutory damages, $45.00 is a 4.5%

23 value (which is not insubstantial), the propriety of awarding *full* statutory damages to Settlement

24 Class members who do not claim actual monetary loss is strongly disputed.  Many FACTA

25 defendants have argued that lack of "actual harm" precludes, if not any award of statutory

26 damages to begin with, at the very least "excessive" statutory damages.  Since it remains to be

27 seen how courts will resolve such constitutional challenges to statutory damage awards under

28

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

1  FACTA, the value negotiated by the Parties represents a fair compromise well within the range of

2  reasonableness.  Yedalian Decl. ¶ 15.

3      "The proposed settlement is not to be judged against a hypothetical or speculative measure

4  of what *might* have been achieved by the negotiators."  *Officers for Justice*, *supra*, 688 F.2d at

5  625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case

6  scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative*

7  *Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided

8  less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*,

9  2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of

10  shareholder class actions were between 2% - 3% of possible damages).

11      The $45 Pet Extreme Gift Card is also reasonable when compared to the value of similar

12  benefits in other FACTA cases.  For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And*

13  *Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295

14  F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having

15  a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA

16  violations against a large corporate defendant.

17      Another benefit of this lawsuit and Settlement is the fact that, as part of the Settlement, Pet

18  Extreme is required to implement (and, as a result, implemented) a written FACTA compliance

19  policy which states that it will not print more than the last five digits of the credit or debit card

20  number nor the credit or debit card expiration date upon any printed receipt provided to any

21  customer that uses a credit or debit card to transact business at any Pet Extreme or Discount Pet

22  store.  Agreement ¶ 12(e); Supp. Gonsalves Decl. ¶ 5.  This FACTA compliance policy ensures

23  that Pet Extreme will not continue to violate the law, willfully, inadvertently or otherwise.

24  Yedalian Decl. ¶ 16.

25      Such non-pecuniary benefits are properly considered in judging the results of the lawsuit.

26  *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking

27  into account fact that, in addition to monetary aspects, the defendant stopped the practices at

28  issue).  This is especially true with a consumer protection statute such as FACTA which, as the

Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at 718.  "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'"  *Ibid.*   The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

> "The FDCPA is a consumer protection statute and was intended to permit, even
> encourage, attorneys like Lemberg to act as private attorney generals to pursue
> FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to
> benefit from this case.  Mickell admits that he has ceased his practice of sending
> letters to debtor's workplaces, a benefit to all class members.  Furthermore, certifying
> the class will serve a 'deterrent' component to other debt collectors who are engaging,
> or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of*
> *Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

**C.      <u>Agreement Provides That Change Of Law Before Final Approval</u>**

**<u>of Settlement Will Not Compromise Settlement Class Members' Benefits</u>**

A further benefit of the Settlement assures that if there is an intervening change of law before final approval of the Settlement, the Settlement and Settlement benefits will continue to remain valid, enforceable and available to Settlement Class members.  Agreement ¶ 24.

The significance of this benefit cannot be understated.  For example, as explained by the Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act").   The Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA violations to those defendants that printed an <u>*expiration date*</u> "between December 4, 2004, and June 3, 2008 [the date the Clarification Act was enacted]." *Bateman*, *supra*, 623 F.3d at 717.  As a result of the change of law imposed by the Clarification Act, many FACTA class action cases were dismissed without any recovery for consumers.  Yedalian Decl. ¶ 18.

//

//

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

The risks posed by potential changes in the law through judicial opinions likewise cannot be understated, particularly in the dynamic area of statutory damage issues.  For example, in a case involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing, even in the absence of actual monetary damages: "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).   However, the United States Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue. *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011). The Supreme Court's anticipated decision was expected to have potentially far reaching effects in the area of statutory damage cases.   The Supreme Court's grant of *certiorari* caused substantial uncertainty and provided defendants facing statutory damage allegations with a potential defense that the law may change. On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as improvidently granted.  *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012). Thus, while no change of law occurred as a result of the Supreme Court's actions in *Edwards*, these events likewise demonstrate the potential for changes in law and the real benefits conferred by the Settlement which safeguards against any such potential changes.  Yedalian Decl. ¶ 19.

**D.**   **The Settlement Is The Product of Extensive Arm's-Length Negotiations**

The Agreement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective Parties' strengths and weaknesses.  Yedalian Decl. ¶¶  20-24.

**E.**   **The Findings Made In This Court's Orders Granting Preliminary Approval Likewise Support The Grant of Final Approval**

The detailed Findings and Recommendations of the Honorable Stanley A. Boone recommending preliminary approval of the class action Settlement (Dkt. #17), which were adopted in full by the Court (Dkt. #19), are likewise adequate considerations that support the grant of final approval of the Settlement.

**F.    The Lack Of Any Opt-Outs, Objections And Requests To Appear Also Supports The Grant of Final Approval**

The lack of any opt-outs, objections and requests to appear also provides further support for the Settlement.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).  "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of the California Attorney General or U.S. Department of Justice likewise provides further support for the Settlement.

**XII.    CONCLUSION**

The proposed class action Settlement is fair, adequate and reasonable.  It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel and with the assistance of Judge Infante.

It is respectfully requested that the Court grant final approval of the Settlement and enter an order and judgment in the form proposed and submitted herewith.

It is also respectfully requested that the Court grant the companion Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative (set for hearing concurrently with this instant Motion).

Respectfully submitted,

DATED:  December 12, 2014          CHANT & COMPANY
                                   A Professional Law Corporation

                                   By:   /S/ – Chant Yedalian
                                        Chant Yedalian
                                        Counsel For Plaintiff
                                        and the Settlement Class

MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT