Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiff
and the Settlement Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRENA TORRES, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PET EXTREME, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 1:13-cv-01778-LJO-SAB<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENT TO THE CLASS REPRESENTATIVE**<br><br>[Filed concurrently with Declaration of Chant Yedalian]<br><br>**HEARING**<br>Date:   January 14, 2015<br>Time:   10:00 a.m.<br>Courtroom: 9 (6th Floor)<br>Judge: Hon. Stanley A. Boone |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on January 14, 2015 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Stanley A. Boone in Courtroom 9 (6th Floor), located at 2500 Tulare Street, Fresno, California 93721, Plaintiff and Class Representative Cirena Torres, and Class Counsel Chant Yedalian of Chant & Company A Professional Law Corporation, will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, the Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement"),[1] as later partially modified by the Parties' Stipulation concerning amendments to Defendant's proposed charities (Dkt. #18) and the Court's Order thereon (Dkt. #19), for an Order:

1. Awarding $118,750 in reasonable attorney's fees and costs to Class Counsel Chant Yedalian of Chant & Company A Professional Law Corporation; and

2. Awarding $5,000 to the Class Representative, Cirena Torres, as an incentive (service) award to compensate her for her service as the representative of the Settlement Class.

This Motion is based upon this Notice of Motion and Motion, the Stipulated Settlement Agreement and Release on file with the Court, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED:  December 12, 2014          CHANT & COMPANY
                                   A Professional Law Corporation


                                   By:   /S/ – Chant Yedalian
                                         Chant Yedalian
                                         Counsel For Plaintiff
                                         and the Settlement Class

---

[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

- 1 -                                          MOTION FOR AWARD OF FEES,
                                               COSTS AND INCENTIVE PAYMENT

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION………………………………………………………………………1

II. THE SETTLEMENT FUND AND OTHER BENEFITS OBTAINED BY THE SETTLEMENT……………………………………………………………………..2

III. THE ATTORNEY'S FEES SOUGHT BY CLASS COUNSEL ARE REASONABLE BECAUSE THE FEES ARE BELOW THE 25% BENCHMARK ESTABLISHED WITHIN THE NINTH CIRCUIT……………………………………………………..3

IV. REVIEWING CLASS COUNSEL'S LODESTAR AS A CROSS CHECK ON THE PERCENTAGE METHOD ALSO SUPPORTS THE REASONABLENESS OF THE FEES REQUESTED………………………………………………………………….4

  A.   Hours Worked By Class Counsel……………………………………………...5

  B.   Reasonable Hourly Rate………………………………………………………7

  C.   Class Counsel's Lodestar: Hours Worked Multiplied By The Reasonable Hourly Rate……………………………………………………….9

  D.   Class Counsel's Lodestar, And Its Use As A Cross Check To The Percentage Method, Also Demonstrates That The Fees And Costs Sought Are Reasonable…..9

  E.   To The Extent The Lodestar Were Insufficient (Which It Is Not), A Multiplier Could Have Been Applied To The Lodestar To Support The Cross Check………..9

V. THE INCENTIVE AWARD REQUESTED FOR THE CLASS REPRESENTATIVE IS REASONABLE AND CONSISTENT WITH AWARDS IN OTHER FACTA CASES......................................................................................................................10

VI. CONCLUSION……………………………………………………………………14

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                                                    **Page(s)**

*Adoma v. Univ. of Phoenix*
　913 F.Supp.2d 964 (E.D. Cal. 2012)……………………………………………………….7-8

*Barjon v. Dalton*
　132 F.3d 496 (9th Cir. 1997)……………………………………………………………..7

*Bateman v. American Multi-Cinema, Inc.*
　623 F.3d 708 (9th Cir. 2010)……………………………………………………………...3

*Cabrales v. County of Los Angeles*
　935 F.2d 1050 (9th Cir. 1991)……………………………………………………………..6

*Camacho v. Bridgeport Financial, Inc.*
　523 F.3d 973 (9th Cir. 2008)……………………………………………………………...6

*Craft v. County of San Bernardino*
　624 F.Supp.2d 1113 (C.D. Cal. 2008)……………………………......................2-3

*Davis v. Hollins Law*
　2014 WL 2619651 (E.D. Cal. June 12, 2014)……………………………………………7-8

*Evon v. Law Offices of Sidney Mickell*
　688 F.3d 1015 (9th Cir. 2012)……………………………………………………………3

*Four In One Company, Inc. v. S.K. Foods, L.P.*
　2014 WL 4078232 (E.D. Cal. Aug. 18, 2014)…………………………………………….8-9

*Ingram v. Oroudjian*
　647 F.3d 925 (9th Cir. 2011)……………………………………………………………..8

*Ingram v. The Coca-Cola Co.*
　200 F.R.D. 685 (N.D. Ga. 2001)…………………………………………………………13

*In re Bluetooth Headset Products Liability Litigation*
　654 F.3d 935 (9th Cir. 2011)……………………………………………………………...3, 4

*In re Nucorp Energy, Inc.*
　764 F.2d 655 (9th Cir. 1985)……………………………………………………………...6

*In re Pacific Enterprises Securities Litigation*
　47 F.3d 373 (9th Cir. 1995)……………………………………………………………….1, 3

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
　295 F.R.D. 438 (C.D. Cal. 2014)…………....……………………………………7, 13, 14

*Jarchafjian v. American Multi-Cinema, Inc., et al.,*
　CV09-03434 JHN (AJWx) (C.D. Cal. October 6, 2011)………………………………….13

*McGee, et al. v. Ross Stores, Inc, et al.*
　C06-7496 CRB (N.D. Cal. January 9, 2009)……………………………………………..13

**Page(s)**

*Moreno v. City of Sacramento*
　　534 F.3d 1106 (9th Cir. 2008)……………………………………………………………….6

*Prison Legal News v. Schwarzenegger*
　　608 F.3d 446 (9th Cir. 2010)…………………………………………………………………...7

*Rodriguez v. West Publishing Corp.*
　　563 F.3d 948 (9th Cir. 2009)……………………………………………….…10-11, 12

*Sakamoto v. One Parking, Inc. et al.*
　　SACV11-1249 MLG (C.D. Cal. June 21, 2012)…………………………………………..14

*Staton v. Boeing Co.*
　　327 F.3d 938 (9th Cir. 2003)…………………………………………………………...2, 11-13

*Tchoboian v. Parking Concepts, Inc., et al.*
　　SACV09-422 DMG (ANx) (C.D. Cal. November 12, 2010)……………………………..13

*Van Vranken v. Atl. Richfield Co.*
　　901 F.Supp. 294 (N.D. Cal. 1995)……………………………………………………...13

*Vizcaino v. Microsoft Corp.*
　　290 F.3d 1043 (9th Cir. 2002)……………………………………………………...9, 10

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………...……………………….8

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………………..…….…*passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

As is more fully set forth in the Motion For Final Approval of Class Action Settlement filed this same day and set for hearing concurrently with this Motion, this is a class action case that, through the diligence of Class Counsel and the Class Representative, has resulted in a $475,000 Settlement Fund, plus other benefits. The other benefits, that are separate from and not included in the Settlement Fund, include up to $57,645 of postage charges for the distribution benefits to the Settlement Class that would be paid for separately by Defendant Pet Extreme, Inc. ("Pet Extreme"), an estimated $40,000 saved by the Parties' self-administration of the Settlement (including for notice, opt-out, claims administration, benefit issuance, printing and envelope charges, etc.), as well as non-pecuniary benefits secured by the Settlement which require Pet Extreme to implement a written FACTA compliance policy.

As is further explained below, the "benchmark" for attorney fee awards in common fund cases in the Ninth Circuit is 25% of the common fund. *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) ["Twenty-five percent is the 'benchmark' that district courts should award in common fund cases"].

In this case, 25% of the $475,000 Settlement Fund (without taking into account the other benefits of the settlement or Class Counsel's costs), results in an amount of $118,750 in fees. Thus, this amount satisfies the 25% benchmark. Further, and as this Court recognized in connection with preliminary approval of the settlement, because the Settlement Fund is not the only benefit that was obtained by the Settlement, the other benefits of the Settlement "brings the attorney fees below 25% of the gross settlement fund which is considered a reasonable fee" Dkt. #17 at p. 11:19-24.

As also further explained below, reviewing Class Counsel's lodestar as a cross check on the percentage method also supports the reasonableness of a $118,750 award of fees and costs to Class Counsel.

In addition, the Class Representative, Cirena Torres, respectfully seeks an incentive award of $5,000 which is fair and reasonable and similar to awards in other FACTA cases.

1  II.     **THE SETTLEMENT FUND AND OTHER BENEFITS OBTAINED BY THE SETTLEMENT**

As explained above, the Settlement has resulted in a non-reversionary $475,000 Settlement Fund.  Agreement ¶ 12(a) and (b).

To the extent any residual funds remain after distribution of benefits to Settlement Class members (the claims period is continuing and remains open until March 27, 2015), any and all such residual funds will be distributed to the designated *cy pres* charities previously approved by the Court.  Agreement ¶ 12(b); Dkt. # 18; Dkt. #19.

In addition to the $475,000 Settlement Fund, the Settlement also secured other benefits that are separate from and not included in the Settlement Fund.

The other benefits obtained by the Settlement include up to $57,645 of postage charges for the distribution benefits to the Settlement Class that would be paid for separately by Defendant Pet Extreme.  Agreement ¶ 12(a) and (b).

The other benefits obtained by the settlement also include an estimated $40,000 saved by the Parties' self-administration of the Settlement (including for notice, opt-out, claims administration, benefit issuance, printing and envelope charges, etc.).  Agreement ¶ 12(b) and (c); Yedalian Decl. ¶ 4 at n.2.  These costs of notice and administration are properly considered when determining the value of the Settlement for purposes of awarding fees.  *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) [holding that it is reasonable "to include that cost in a putative common fund benefiting the plaintiffs for all purposes, including the calculation of attorneys' fees"].

The other benefits obtained by the Settlement also include the requirement that Pet Extreme shall implement a written FACTA compliance policy which states that it will not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any printed receipt provided to any customer that uses a credit or debit card to transact business at any Pet Extreme or Discount Pet store.  Agreement ¶ 12(e).  This FACTA compliance policy ensures that Pet Extreme will not continue to violate the law, willfully, inadvertently or otherwise.  Such non-pecuniary benefits are properly considered in judging the

results of the lawsuit. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue). This is especially true with a consumer protection statute such as FACTA which, as the Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010). "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Ibid.* The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

> "The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case. Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members. Furthermore, certifying the class will serve a 'deterrent' component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

### III. THE ATTORNEY'S FEES SOUGHT BY CLASS COUNSEL ARE REASONABLE BECAUSE THE FEES ARE BELOW THE 25% BENCHMARK ESTABLISHED WITHIN THE NINTH CIRCUIT

In this case, 25% of the $475,000 Settlement Fund (without taking into account the other benefits of the settlement or Class Counsel's costs), results in an amount of $118,750 in fees. Thus, a request for fees in the amount of $118,750, would satisfy the 25% benchmark established in the Ninth Circuit. *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) ["Twenty-five percent is the 'benchmark' that district courts should award in common fund cases"]; *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011).

Here, Class Counsel seeks a total award of fees plus costs in the amount of $118,750.[2] Thus, the request is within the 25% benchmark considering the $475,000 Settlement Fund recovered.

Further, and as this Court recognized in connection with preliminary approval of the settlement, because the $475,000 Settlement Fund is not the only benefit that was obtained by the Settlement, the other benefits of the Settlement "brings the attorney fees below 25% of the gross settlement fund which is considered a reasonable fee." Dkt. #17 at p. 11:19-24. As this Court explained:

> "Class counsel is seeking $118,750.00 in attorney fees and costs which is 25% of the gross settlement amount. In this instance, the parties are picking up the costs of settlement administration and Pet Extreme is to pay $57,645 in postage charges for distribution of the Pet Extreme Gift Cards. Further, the settlement also includes the agreement that Pet Extreme shall implement a written policy to comply with the FACTA. This brings the attorney fees below 25% of the gross settlement fund which is considered a reasonable fee." Dkt. #17 at p. 11:19-24.

## IV. REVIEWING CLASS COUNSEL'S LODESTAR AS A CROSS CHECK ON THE PERCENTAGE METHOD ALSO SUPPORTS THE REASONABLENESS OF THE FEES REQUESTED

Reviewing Class Counsel's lodestar as a cross check on the percentage method also supports the reasonableness of a $118,750 award of fees and costs to Class Counsel. The lodestar figure is calculated by multiplying the number of hours the attorney reasonably expended on the litigation by the reasonable hourly rate. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 941.

//

//

---

[2] Through the Agreement, it was agreed that Class Counsel would seek up to $118,750 in fees and costs without objection by Pet Extreme. Agreement ¶ 21. Although Class Counsel has incurred costs in the prosecution of this case (Yedalian Decl. ¶ 3 at n.1), as explained below Class Counsel's lodestar exceeds $118,750, thereby rendering the costs moot.

### A. Hours Worked By Class Counsel

To date, Class Counsel has devoted 200.75 hours of his time on this case. Yedalian Decl. ¶ 6. Class Counsel expects to devote at least an additional 30 hours on this case appearing for the final approval and fairness hearing and work relating to the continuing administration of this Settlement, including answering further calls from Settlement Class members, receiving continuing claims and ensuring that the continuing claims process is administered and that, ultimately, class benefits and any residual funds to the designated *cy pres* charities are properly made. Yedalian Decl. ¶ 6. This brings the total minimum time which counsel will devote to this case to 230.75 hours. *Ibid.*

The time Class Counsel has already devoted to this case was spent on, among other things, investigating the claims (including Defendant's various physical locations and receipt printing practices), prosecuting the claims, securing agreements to exchange information with the defense and negotiations and agreements resulting in the exchange of information, various settlement discussions and negotiations with the defense, including those that ultimately resulted in an initial written MOU document, and through later negotiations, the Stipulated Settlement Agreement and Release, work in attempting to secure the Court's preliminary and final approval of the Settlement, including preparation of the motions for preliminary and final approval of the Settlement and the various related documents, the motion for fees and incentive awards, and work on the administration of the Settlement (which the Parties agreed to self-administer) including work with the web programmer, class notices, and claims by and communications with Settlement Class members. Yedalian Decl. ¶ 7.

To the extent the Court would like to review all of the different tasks performed by Class Counsel, Class Counsel has submitted along with the Chambers' copy of this Motion, an unredacted paper copy of his 14 pages of itemized time records for the Court's *in camera* review. Yedalian Decl. ¶ 8.[3] These itemized time records show the tasks performed by Class Counsel and the amount of time Class Counsel worked on each task on each date. *Ibid.* Each and every task

---

[3] Because the time records are unredacted, they contain sensitive and privileged information as well as work product, and they are therefore submitted for *in camera* review.

concerns the FACTA cause of action prosecuted, and ultimately settled, in this case. *Ibid.* The hours worked were therefore plainly reasonable to accomplish these tasks and could and would certainly have been billed to a private client who hired counsel to pursue such litigation. *Ibid; Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.")

This includes all steps that contribute to the ultimately successful resolution of this case (even if, along the way, the district court does not adopt each contention raised). *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991). Accordingly, and consistent with this approach, Class Counsel's work related to the fee award motion is likewise time that is reasonably incurred:

> "'[F]ederal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.' *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985). This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

The Ninth Circuit has also emphasized that district courts must by and large defer to a fee proponents professional judgment on how much time was required to be spent on the case:

> "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee…. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d 1106, 1112.

The hours here were worked by a skilled class action attorney who has the necessary skill and experience to litigate the nuances, and achieve settlement, of a class action FACTA case. Yedalian Decl. ¶¶ 34-48

### B. <u>Reasonable Hourly Rate</u>

Class Counsel, Mr. Yedalian's hourly rate is $550 and that rate is well supported by his skill and experience with class action and FACTA matters. Yedalian Decl. ¶¶ 9-15, 34-48. Mr. Yedalian is one of the most experienced FACTA class action attorneys in the nation. Yedalian Decl. ¶¶ 37-43. He was among one of the first attorneys in the nation to prosecute FACTA cases and he has successfully prosecuted to conclusion several FACTA cases on a class basis. *Ibid.*

Mr. Yedalian's $550 hourly rate has been recognized and approved in the Central District of California. *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 462-464 (C.D. Cal. January 17, 2014).

In connection with determining a reasonable hourly rate, Class Counsel recognizes that "[g]enerally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Class Counsel also recognizes that rates in the Eastern District of California are generally lower than other federal districts in California, such as in the Central District. *Davis v. Hollins Law*, 2014 WL 2619651 *5 (E.D. Cal. June 12, 2014).

However, as Senior District Judge Karlton has recognized and held on several occasions, these are only general principles, and should not change the reasonableness of Class Counsel's hourly rate in cases such as this one:

> "While the Ninth Circuit has observed that '[g]enerally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits[,]' *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010), this is not an absolute rule. '[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.' *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citation and internal quotation omitted). Moreover, as I have previously noted, 'To insist on awarding significantly lower hourly rates in the Eastern District than those in the other judicial

districts in California would discourage attorneys from bringing meritorious lawsuits in this district.' *Adoma v. Univ. of Phoenix*, 913 F.Supp.2d 964, 984 (E.D. Cal. 2012). Further, '[J]udges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees.' *Ingram v. Oroudjian*, 647 F.3d 925, 926 (9th Cir. 2011). The court is informed, and takes into consideration, the fact that many consumer attorneys in California, who work under fee-shifting statutes such as the FDCPA, the Truth in Lending Act, and the Fair Credit Reporting Act [of which FACTA is a part], prefer not to bring cases in the Eastern District because they fear that they will be shortchanged in their fees. Given the choice of two meritorious cases, one of which is in the Eastern District and another elsewhere in California, skilled attorneys will generally choose the latter in order to safeguard their fees. The consequence, in many (though not all) instances, is to leave cases in this district to less-skilled attorneys. While the cost of living in the Eastern District is somewhat lower than other parts of California, the fact remains that the majority of consumer attorneys are clustered in the coastal cities and must pay the costs of living there. Forcing them to accept lower rates reduces their willingness to accept cases in this judicial district, and thereby tacitly weakens the protections available to consumers in this part of the state relative to consumers in the rest of the state. That result is unacceptable." *Davis v. Hollins Law*, 2014 WL 2619651 *5 (E.D. Cal. June 12, 2014).

Additionally, the Court need not parse as fine distinctions between different rates among sister districts when the lodestar is used to cross check against the reasonableness of the percentage method. Instead, when the lodestar is used as a cross check, the Court need only make a "rough calculation" of the lodestar. *Four In One Company, Inc. v. S.K. Foods, L.P.*, 2014 WL 4078232 *13 (E.D. Cal. Aug. 18, 2014).

The fact that Class Counsel possessed and was adept at using skills to achieve an early settlement is yet another fact that supports the reasonableness of his hourly rate. *Four In One Company, Inc.*, 2014 WL 4078232 *12. [Holding that the fact that class counsel obtained a

settlement early in litigation and avoided increased costs of litigation weighs in favor of class counsel's award, including use of a benchmark award of 25 percent of the settlement fund.] Indeed, the success is a testament to Class Counsel's skills and effectiveness, and further supports the reasonableness of his hourly rate.

### C. Class Counsel's Lodestar: Hours Worked Multiplied By The Reasonable Hourly Rate

The 230.75 hours of work devoted by Class Counsel to this case multiplied by Class Counsel's $550 hourly rate yields a total lodestar of $126,912.50. Yedalian Decl. ¶ 16.

### D. Class Counsel's Lodestar, And Its Use As A Cross Check To The Percentage Method, Also Demonstrates That The Fees And Costs Sought Are Reasonable

Class Counsel's lodestar of $126,912.50, and its use to cross check the percentage method, further demonstrates that the $118,750 in fees and costs sought by Class Counsel is reasonable. Yedalian Decl. ¶ 17.

### E. To The Extent The Lodestar Were Insufficient (Which It Is Not), A Multiplier Could Have Been Applied To The Lodestar To Support The Cross Check

As demonstrated above, Class Counsel's lodestar is slighted greater than the fees and costs sought. However, even if the lodestar were lower, a multiplier could have been applied to the lodestar in performing a cross check. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 and n.6 (9th Cir. 2002).

The Ninth Circuit has found that multipliers range from 0.6–19.6, with most multipliers ranging from 1.0 to 4.0. *Vizcaino*, 290 F.3d at 1051 and n.6.

Here, one of the most compelling reasons that would support a multiplier, if one were necessary, would be the fact that counsel took this case on a contingency basis with no guarantee of any recovery. Yedalian Decl. ¶ 20.

Another compelling fact that would support a multiplier, if one were necessary, is that the amount in fees sought is lower than 25% of the fund recovered. A reasonable contingency fee in the private marketplace often exceeds 25%. Yedalian Decl. ¶ 21. Thus, were a multiplier

necessary, the application of a multiplier in an amount necessary to approximate a contingency fee percentage that would be reasonable to receive in the private marketplace would be justified. *Ibid.*

The Ninth Circuit has held that both of the foregoing factors properly support the application of an upward multiplier:

> "The bar against risk multipliers in statutory fee cases does not apply to common fund cases. *WPPSS*, 19 F.3d at 1299–1300. Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of nonpayment in common fund cases.' *Id.* at 1300. This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *Id.* at 1299. In common fund cases, 'attorneys whose compensation depends on their winning the case[ ] must make up in compensation in the cases they win for the lack of compensation in the cases they lose.' *Id.* at 1300–01 (internal citation and quotation omitted)." *Vizcaino*, 290 F.3d at 1051.

Another fact that would support a multiplier, if one were necessary, is that, as a result of this case, Class Counsel was precluded from taking on other work. Yedalian Decl. ¶ 23. Class Counsel can only properly litigate a limited number of cases at any one time. *Ibid.* Thus, as a result of the time and commitment actually required by this case, Class Counsel was precluded from taking on and working on other matters which were available to him and where Class Counsel's time could have otherwise been spent. *Ibid.*

## V. THE INCENTIVE AWARD REQUESTED FOR THE CLASS REPRESENTATIVE IS REASONABLE AND CONSISTENT WITH AWARDS IN OTHER FACTA CASES

Class Counsel respectfully requests that the named Plaintiff and only Class representative, Cirena Torres, be awarded an incentive award in the amount of $5,000.

"Incentive *awards* are fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). "[They] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk

undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Ibid.*

In assessing incentive awards, courts may also apply the following guideposts articulated in *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003):

> "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Each of these factors, as it applies to the Class Representative in this case, is explained as follows:

First, were it not for the Class Representative stepping forward and shouldering the duties of protecting and prosecuting the interests of other Settlement Class members, it is likely the interests of the Settlement Class would neither have been prosecuted, nor benefited. Yedalian Decl. ¶ 25. Indeed, the parties have acknowledged that, to their knowledge, there is no other litigation, either pending or otherwise, on a class or individual basis, concerning the claims in this lawsuit. *Ibid.*

Moreover, Ms. Torres has done all things reasonably expected of her in her capacity as Class Representative. Yedalian Decl. ¶ 26. Ms. Torres was subjected to liability for defense costs in the event the litigation was unsuccessful. *Ibid.* By stepping forward to shoulder this action on behalf of the class, Ms. Torres also took on other risks, including the risk of subjecting herself to intrusive discovery. *Ibid.* Ms. Torres also regularly and consistently communicated with Class Counsel (including in-person, by phone and by email) throughout the time this lawsuit was pending. *Ibid.* She also reviewed relevant documents, provided her input, and otherwise kept apprised of litigation related events and developments. *Ibid.* She also provided her ideas and input to Class Counsel in the various rounds of settlement negotiations and exchanges, including

1  but not limited to conducting research into various possible *cy pres* charities, and she also
2  participated in the process to finalize the written settlement terms and documents, and the post-
3  agreement phases that followed.  *Ibid.*  In sum, Ms. Torres contributed as much of her valuable
4  time as this litigation demanded to ensure a vigilant prosecution of and favorable outcome for the
5  best interests of the Settlement Class.  *Ibid.*  In addition to satisfying the first *Staton* factor, these
6  facts further support an incentive award because they "recognize [a class representatives]
7  willingness to act as a private attorney general."  *Rodriguez v. West Publishing Corp.*, 563 F.3d
8  948, 958-959 (9th Cir. 2009).

9        Many of the facts supporting the first factor also support the second *Staton* factor in so far
10 as that the Settlement Class has benefited from the Class Representative's actions.  It is fair to say
11 that but for Ms. Torres' actions, there would be no resulting benefit to individual Settlement Class
12 members or *cy pres* benefits.  Yedalian Decl. ¶ 27.  Moreover, it is only as a result of this lawsuit
13 that the Defendant ceased its offensive conduct and agreed to implement a written FACTA
14 compliance policy.  *Ibid.*  Thus, Ms. Torres effectuated substantial change of conduct, thereby
15 accomplishing the "deterrent" objectives of FACTA.  She was also willing and stepped forward to
16 act as a private attorney general where no other plaintiff has done so.  *Ibid.*

17       The fact that the Court has already made a preliminary finding that the Settlement is fair,
18 adequate and reasonable, also supports the significance of the benefits achieved through the Class
19 Representative's initiative and perseverance.  Yedalian Decl. ¶ 28.

20       Third, it is estimated that Ms. Torres devoted approximately 25-30 hours of her time to
21 pursue this litigation.  Yedalian Decl. ¶ 29. By definition, the time she devoted to this litigation
22 was time spent away from work and/or leisure in an effort to advance the interests of the entire
23 class.

24       Although the fourth *Staton* factor (fear of workplace retaliation) is not applicable to this
25 type of case, a similar concern, the Class Representative stepping forward and thereby taking on
26 the risks of being subjected to intrusive discovery and defense costs in the event the litigation was
27 unsuccessful, are factors discussed in connection with the first factor, above.
28

Another factor properly considered by the Court in assessing an incentive award is the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 472 (C.D. Cal. January 17, 2014):

> "An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member. See *Razilov*, 2006 WL 3312024, at *4 (approving the payment of an incentive award where the only benefit a class representative was going to receive from a settlement was the same statutory damages other class members would receive); *Van Vranken*, 901 F.Supp. at 299 (where a class representative's claim made up 'only a tiny fraction of the common fund,' a substantial incentive award was appropriate). The named plaintiffs in this action will receive no relief beyond that available to members of the class in general; absent an incentive award, they will each be eligible to submit a claim for a $5, $15, or $30 voucher. This factor, therefore, also favors approval of an incentive award." *Ibid.*

The amount requested is also reasonable in relation to other cases. In *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. In *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995), a $50,000 incentive award was approved for similar participation.

The amount requested is also similar to incentive awards in various other FACTA cases. Yedalian Decl. ¶ 32. For example, in *McGee, et al. v. Ross Stores, Inc, et al.*, C06-7496 CRB (N.D. Cal. January 9, 2009), the court awarded each of the two class representatives a $5,000 incentive payment. In *Tchoboian v. Parking Concepts, Inc., et al.*, SACV09-422 DMG (ANx) (C.D. Cal. November 12, 2010) the court awarded the only class representative a $5,000 incentive payment. In *Jarchaffian v. American Multi-Cinema, Inc., et al.*, CV09-03434 JHN (AJWx) (C.D. Cal. October 6, 2011) the court awarded the only class representative a $5,000 incentive payment.

In *Sakamoto v. One Parking, Inc. et al.*, SACV11-1249 MLG (C.D. Cal. June 21, 2012) the court awarded the only class representative a $5,000 incentive payment. In *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 472 (C.D. Cal. January 17, 2014), the court awarded each of the three class representatives a $5,000 incentive payment.

In sum, the requested incentive payment of $5,000 to Ms. Torres, the only Class Representative in this case, for the valuable time and resources she contributed to advance this litigation is fair and reasonable, and it is respectfully requested that the Court approve and award this amount as her incentive award. Yedalian Decl. ¶ 33.

## VI.   CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Court grant the Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative.

Respectfully submitted,

DATED:  December 12, 2014    CHANT & COMPANY
A Professional Law Corporation

By:   /S/ – Chant Yedalian
      Chant Yedalian
      Counsel For Plaintiff
      and the Settlement Class