1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17

| | |
|---|---|
| CIRENA TORRES, on behalf of herself and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>PET EXTREME,<br><br>    Defendant. | Case No.  1:13-cv-01778-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND ATTORNEY FEES AND COSTS AND INCENTIVE AWARD TO CLASS REPRESENTATIVE<br><br>(ECF Nos. 20, 21)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

18
19
20
21
22

   Plaintiff Cirena Torres, on behalf of herself and all others similarly situated, filed this class action complaint against Defendant Pet Extreme alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. 1681 et seq.  Currently before the Court are Plaintiff's motion for final approval of the class action settlement and a motion for attorney fees and class representative incentive award.

23
24

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

25
26
27
28

   Defendant Pet Extreme operates a chain of retail stores offering a variety of goods and services for sale to the public.  (Compl. ¶ 11, ECF No. 1.)  In conducting business, Defendant accepts credit card and debits cards.  (Id. at ¶ 31.)  The FACTA provides that by December 4,

2006, merchants were to comply the FACTA, which requires that no more than the last five digits of the credit card number can be printed on the receipt and the expiration date of the card must be deleted.  (Id. at ¶¶ 29, 39.)  Plaintiff Torres contends that she made a purchase from Defendant after December 2006 using a credit card or debit card and the expiration date of her card, the brand of the card, and the last four digits of the card were printed on the receipt.  (Id. at ¶ 32.)

On November 2, 2013, Plaintiff filed this class action alleging that Defendant is in violation of the FACTA by printing the expiration date of credits cards on customer receipts. After engaging in negotiations, on September 23, 2014, the parties received preliminary approval of the class-wide settlement of this lawsuit.  On December 12, 2014, Plaintiff filed a motion for final approval of the class action settlement and a motion for attorney fees and costs and an incentive award for the class representative.  (ECF Nos. 20, 21.)  On January 10, 2014, Plaintiff filed supplemental briefing at the request of the Court.  (ECF No. 23.)

The Court held a final fairness hearing on January 14, 2015.  (ECF No. 24.)  Class counsel Chant Yedalian appeared in person for Plaintiff, and counsel Mohammad Walizadeh appeared telephonically for Defendant.  Id.  Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the January 14, 2015 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

## II.

## LEGAL STANDARD

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole.  Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir. 2012) reh'g denied 709 F.3d 791 (9th Cir. 2013).

Review of the proposed settlement of the parties proceeds in two phases.  True v. American Honda Motor Co., 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010).  At the preliminary approval stage, the court determines whether the proposed agreement is within the range of

possible approval and whether or not notice should be sent to class members. Id. at 1063.  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).  At the final approval stage, the court takes a closer look at the settlement, taking into consideration objections and other further developments in order to make the final fairness determination. True, 749 F.Supp.2d at 1063.

### III.

### TERMS OF THE SETTLEMENT AGREEMENT

The terms of the settlement agreement are as follows:

The settlement class consists of all consumers who were provided with an electronically printed receipt which included the expiration date of the consumer's credit card after making a purchase at any Pet Extreme or Discount Pet store during the period of November 2, 2011 to October 18, 2013.

Defendant shall establish a settlement fund in the amount of $475,000.00 ("gross settlement fund").  All settlement administration costs, except for the postage charges for the distribution of Pet Extreme Gift Cards, will be paid for separately by Pet Extreme and will not be deducted from the gross settlement fund.  The first $57,645.00 in postage charges will not be deducted from the gross settlement fund, but will be paid separately by Pet Extreme.  Class counsel attorney fees and costs, an incentive payment to the class representative, settlement website programming costs, and any postage charges in excess of $57,645.00 will be deducted from the gross settlement amount, and the remaining funds ("net settlement amount") will be divided by the total number of settlement class members who submit a valid and timely claim.

Each settlement class member that submits a valid and timely claim will be mailed a Pet Extreme Gift Card.  The amount of the gift card will be determined by dividing the total number of settlement class members who submit a valid and timely claim by the net settlement fund.

1   The maximum amount of the gift card that any settlement class member would receive is $45.00.
2   Each settlement class member may only submit one claim regardless of the number of credit
3   purchases they made during the period of November 2, 2011 to October 18, 2013.

4        The Pet Extreme Gift Card will not expire and is fully transferrable.  The gift card may be
5   used to make purchases at any Pet Extreme or Discount Pet store, but is not redeemable for cash.
6   If any of the net settlement fund remains after all settlement class members who submit valid
7   claim forms receive Pet Extreme Gift Cards, the residual funds will be distributed to charities.

8        Defendant Pet Extreme shall implement a written FACTA compliance policy which
9   states that it will not print more than the last five digits of credit or debit card numbers on
10   receipts and the expiration date of credit or debit cards will not be printed on any receipt
11   provided to a consumer for purchases at any Pet Extreme or Discount Pet store.

12        Since Defendant does not have information to determine the identifies of the consumers
13   who made purchases from the period of November 2, 2011 to October 18, 2013, notice of the
14   settlement shall be provided in the following manner: 1) each Pet Extreme and Discount Pet
15   store shall post the Short-Form Notice-1 in a conspicuous location at the front door and at each
16   register for a period of at least 180 days; 2) each Pet Extreme and Discount Pet store shall post
17   the Short-Form Notice-2 on the Community Board for a period of at least 180 days.  The Short-
18   Form Notice shall include the settlement website address and a toll-free number which
19   settlement class members may contact to obtain further information.

20        During this same period of time, a notice of settlement will be posted on the homepage of
21   Pet Extreme's website.  The notice will state "Notice of Class Action Settlement" in boldface
22   font and will contain a hyperlink to the Settlement website.  There will also be a viewable and
23   printable long-form notice on the settlement website containing a description of the settlement
24   terms.

25        Settlement class members will have 180 days from the date the Short-Form Notice is first
26   posted at Pet Extreme and Discount Pet stores to submit a claim form.  Claim forms may be
27   submitted by mail or by facsimile.  There will also be an electronic version of the claim form that
28   can be submitted through the settlement website.  To submit a valid claim, the class member

must produce evidence that he or she received a customer receipt at any time during the period of November 2, 2011 to October 18, 2013 that displays the expiration date of his or her credit or debit card. Proof may consist of the original or a copy of the receipt showing a transaction made during the period of November 2, 2011 to October 18, 2013 or a credit or debit card statement showing a transaction made at any Pet Extreme or Discount Pet store during the period of November 2, 2011 to October 18, 2013.

Settlement class members will have 60 days from the date the Short-Form Notice is first posted by Pet Extreme to exclude themselves from or object to the settlement. The settlement agreement shall be self-administered by the parties. All administration expenses, except for the postage charges for mailing the Pet Extreme Gift Cards, will be paid for by Pet Extreme and will not be deducted from the settlement fund.

## IV.

## DISCUSSION

When the settlement takes place before formal class certification, as it has in this instance, settlement approval requires a "higher standard of fairness." Lane, 696 F.3d at 819 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). This more exacting review of class settlements reached before formal class certification is required to ensure that the class representatives and their counsel do not receive a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." Lane, 696 F.3d at 819.

### A.   Final Certification of the Class

Rule 23(a) of the Federal Rules of Civil Procedure requires that to certify a class action the members must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation. "Moreover, the proposed class must satisfy the requirements of Rule 23(b), which defines three different types of classes." Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013)

The Court has previously found that the class meets the prerequisites of numerosity, commonality, typicality and adequacy of representation. Further, the Court found that common questions predominate and allowing this action to proceed as a class action is the superior

1   method of adjudicating the controversy given the number of potential class members and the

2   amount of damages at issue for each class member.   (Findings and Recommendations

3   Recommending Preliminary Approval of Class Action Settlement 3-7, ECF No. 17.)

4       No class member has objected to the settlement of this action and the Court is unaware of

5   any changes that would affect the class certification findings.   For the reasons set forth in the

6   findings and recommendations on Plaintiffs' motion for preliminary approval of the class action

7   settlement, which was adopted by Judge O'Neill on September 18, 2014, the Court finds that the

8   settlement class continues to meet the requirements of Federal Rule of Civil Procedure 23(a) and

9   (b).  (ECF Nos. 17, 19.)

10       The settlement class in this matter consists of all consumers who, at any time during the

11   period November 2, 2011 to October 18, 2013, were provided an electronically printed receipt at the

12   point of a sale or transaction at any Pet Extreme or Discount Pet store, on which receipt was printed

13   the expiration date of the consumer's credit card or debit card.  This class is certified solely for the

14   purpose of entering a settlement in this matter.

15       **B.**    **Notice**

16       Rule 23 requires that notice for any class certified under Rule 23(b)(3) must be "the best

17   notice that is practicable under the circumstances, including individual notice to all members

18   who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In this instance,

19   the parties were not able to identify the individuals that made purchases by credit card to provide

20   notice by mail.  For that reason, the Court found that posting a legal notice at the front door and

21   at each register at each location and posting the information on the company website regarding

22   this class action settlement was the best notice practicable under the circumstances.  (ECF No. 17

23   at 12-13.)   Notice by publication has been found to be adequate where identification of

24   individual class members is not possible through reasonable effort.   In re Tableware Antitrust

25   Litigation, 484 F.Supp.2d at 1080.

26       The notice itself clearly identifies the options available to the putative class members: to

27   complete a claim form to receive a gift card under the settlement or opt out of the class.  (Notice

28   of Class Action Lawsuit and Settlement, ECF No. 20-1.)  The Court finds that the notice itself is

1   sufficient to satisfy the requirements of Rule 23(c)(2)(B).   See Churchill Village, L.L.C. v.

2   General Electric, 361 F.3d 566, 576 (9th Cir. 2004) ("Notice is satisfactory if it 'generally

3   describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

4   investigate and to come forward and be heard.' ") (quoting Mendoza v. Tucson Sch. Dist. No. 1.,

5   623 F.2d 1338, 1352 (9th Cir.1980)).

6          As provided by the settlement agreement, notice was posted at each of Pet Extreme's ten

7   retail locations and the settlement information was posted on Pet Extreme's website.  (Suppl.

8   Decl. of Eric Gonsalves ¶¶ 3, 4, ECF No. 20-3.)  The Court finds that the notice provided was

9   the best notice practicable to inform the class members of their rights under the settlement

10  agreement.

11         **C.      Final Approval of Settlement**

12         The court considers a number of factors in making the fairness determination including:

13  "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

14  litigation; the risk of maintaining class action status throughout the trial; the amount offered in

15  settlement; the extent of discovery completed and the stage of the proceedings; the experience

16  and views of counsel; the presence of a governmental participant; and the reaction of the class

17  members to the proposed settlement." Lane, 696 F.3d at 819 (quoting Hanlon, 150 F.3d at

18  1026).  All of these factors will not apply to every class action settlement and one factor alone

19  may prove sufficient grounds for court approval.   Nat'l Rural Telecommunications Coop. v.

20  DIRECTV, Inc. (DIRECTV), 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  "The relative degree of

21  importance to be attached to any particular factor will depend upon and be dictated by the nature

22  of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

23  presented by each individual case." Officers for Justice v. Civil Serv. Comm'n of San Francisco,

24  688 F.2d 615, 625 (9th Cir. 1982).

25         The class representatives have an incentive to advance their own interests over that of the

26  class and class counsel owes the ultimate fiduciary responsibility to the class as a whole and is

27  not bound by the views of the named plaintiffs regarding settlement. Staton v. Boeing Co., 327

28  F.3d 938, 959-60 (9th Cir. 2003).  Therefore, in assessing the fairness of the settlement, the court

1   is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion

2   between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

3   adequate to all concerned."  Hanlon, 150 F.3d at 1027 (quoting Officers for Justice, 688 F.2d at

4   625.)

5          1.      The Strength of Plaintiff's Case

6          "An important consideration in judging the reasonableness of a settlement is the strength

7   of the plaintiffs' case on the merits balanced against the amount offered in the settlement."

8   DIRECTV, 221 F.R.D. at 526 (quoting 5 Moore Federal Practice, § 23.85[2][b] (Matthew

9   Bender 3d. ed.)).  The court's role is not to reach any ultimate conclusion on the facts or law

10  which underly the merits of the dispute as the very uncertainty of the outcome and the avoidance

11  of expensive and wasteful litigation is what induces consensual settlements.  Officers for Justice,

12  688 F.2d at 625.

13         In order to prevail and recover statutory damages under 15 U.S.C. § 1681n, Plaintiff must

14  show that Defendant's conduct was willful.  U.S. v. Bormes, 133 S.Ct. 12, 15 (2012).  While Pet

15  Extreme vigorously denies that it willfully printed information on receipts in violation of the

16  statute, Plaintiff believes that the conduct was reckless and a result of Defendant failing to use

17  adequate measures to safeguard the rights of consumers.  Given the uncertainty of litigating the

18  issue of willfulness, the proposed settlement agreement provides the parties with a fair resolution

19  of the issues presented in this action which weighs in favor of settlement.

20         2.      The Risk, Expense, Complexity, and Likely Duration of Further Litigation

21         There is essentially only one issue present in this action, whether Defendant willfully

22  printed the credit card dates on consumer's credit card receipts.  Absent a settlement, the parties

23  to this action dispute whether this action is suitable for class certification.  Litigating class

24  certification issues would cause further expense and delay in this action.  Additionally, the

25  settlement agreement provides that a change of law prior to final approval will not compromise

26  the settlement class' benefits.  This provides a benefit to the class as they do not run the risk of

27  losing the opportunity to recover statutory damages given that the provisions at issue here were

28  recently enacted in 2003.  Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 717 (9th Cir.

1   2010).  This has occurred in the past when, due to misunderstandings regarding the requirements,

2   the statute was amended in 2008 to insulate any merchants from liability who printed an

3   expiration date on a receipt from December 4, 2004 to June 3, 2008.  Id.  There is some risk that

4   an opinion could issue changing the legal landscape in this relatively new area of statutory law.

5          The parties have reached an agreement at an early stage of these proceedings and

6   litigating the issues of class certification and liability would likely result in several years of

7   costly litigation.  This factor weighs in favor of settlement.

8          3.     The Amount Offered in Settlement

9          Defendant in this action has agreed to establish a settlement fund in the amount of

10  $475,000.00.  Each class member who submits a claim form will receive a Pet Extreme gift card

11  worth up to $45.00.  Additionally, Defendant has agreed to self-administer the settlement and

12  claims process increasing the funds available to the class members.

13         A willful violation of section 1681n provides actual damages or statutory damages of not

14  less than $100.00 and not more than $1,000.00.  15 U.S.C. § 1681n(a)(1)(A).  Plaintiff argues

15  that the propriety of awarding the maximum statutory damages to a plaintiff who does not have

16  actual monetary loss is strongly disputed.  The Court agrees that without any actual monetary

17  loss or facts regarding willful conduct not present here, it appears unlikely that the class

18  members would receive maximum statutory damages for the conduct at issue.

19         The settlement agreement provides that each class member who elects to participate in

20  the settlement will receive a gift card in an amount up to $45.00, depending upon the number of

21  class members who submit claim forms.  As of the date of the hearing, only 45 claim forms have

22  been submitted by the unnamed class members. [1]  (Pl.'s Supplemental Briefing in Support of

23  Mot. for Final Approval of Class Action Settlement 3, ECF No. 23.)  Based upon the response to

24  date each participating class member will receive 45% of the minimum statutory damages.

25  While the gift cards the class members receive are not redeemable for cash, they will not expire

26  and are transferable.

27

28  [1] At the January 14, 2015 hearing, counsel informed the Court that four additional claim forms had been submitted.

1    Given the facts present here, this appears to be a fair resolution for the individual class

2  members.  Further, as a result of the settlement, Defendant has implemented a written FACTA

3  compliance policy ensuring that its' stores will be in compliance with the FACTA in printing

4  information on credit receipts.  As of October 19, 2013, Defendant has not printed credit receipts

5  that fail to comply with the FACTA.  (ECF No. 20-3 at ¶ 5.)

6    The amount provided to each participating class member and the policy implemented by

7  Defendant to ensure compliance with the FACTA weigh in favor of settlement.

8    4.    The Stage of the Proceedings

9    While a settlement that occurs in an advanced stage of the proceedings indicates that the

10  parties have carefully investigated the claims before resolving the action, Ontiveros v. Zamora,

11  __ F.R.D. __, 2014 WL 5035935, at *12 (E.D. Cal. Oct. 8, 2014), the settlement in this action

12  occurred shortly after Defendants filed an answer to the complaint.  In reaching a settlement, the

13  parties engaged in extensive negotiations and exchanged information to facilitate the discussions.

14  (Decl. of Chant Yedalian ¶ 3, ECF No. 20-4.)  This action has settled at a relatively early stage of

15  the proceedings and the Court finds that this fact is neutral in the settlement analysis.

16    5.    The Experience and Views of Counsel

17    Class counsel has extensive experience in consumer related lawsuits and in litigating

18  actions alleging violations of the FACTA.  (ECF No. 20-4 at ¶¶ 34-42.)  Class counsel carefully

19  considered the merits of and risks associated with this litigation and the benefits the class

20  receives by this settlement.  (Id. at ¶¶ 5-23.)  While counsel believes that the violation of the

21  FACTA was willful, he considered the issues and risks concerned with litigating the legal

22  requirements for a willful violation of the FACTA on the facts of this case, that class

23  certification will be a hotly contested issue, and the substantial benefit to the class compared to

24  the risks of continued litigation.  (Id. at ¶¶ 7, 10, 14-16.)  After investigating the facts, law, and

25  potential exposure and issues that could arise at trial, he believes that this settlement is fair,

26  adequate, and reasonable.  (Id. at ¶¶ 22-23.)

27    Given counsel's familiarity with the facts of this action and his experience in this area of

28  law, the Court gives considerable weight to his opinion.  Counsel's opinion that the settlement is

1    fair, adequate, and reasonable provides further support in favor of settlement.

2           6.      The Reaction of the Class Members to the Proposed Settlement

3           "It is established that the absence of a large number of objections to a proposed class

4    action settlement raises a strong presumption that the terms of a proposed class settlement action

5    are favorable to the class members." DIRECTV, 221 F.R.D. at 529.  Here, no class member has

6    opted out of the class, filed an objection, or requested to appear at the final fairness hearing.

7    (ECF No. 20-4 at ¶¶ 26-32.)  Further, notice of this settlement was provided to the California

8    Office of the Attorney General and the U.S. Department of Justice who have not objected to the

9    settlement.  (Decl. of Mohammad Walizadeh ¶¶ 2-3, ECF No. 20-5.)  The absence of any

10   objections is compelling evidence that the settlement is fair, adequate and reasonable.

11   DIRECTV, 221 F.R.D. at 529.  The reaction of the class members weighs in favor of settlement.

12          After considering the foregoing factors, the Court finds that the settlement is fair,

13   adequate, and reasonable pursuant to Rule 23(e).

14   **D.      Attorney Fees**

15          Class counsel seeks $118,750.00 in attorney fees associated with prosecuting this action.

16   (Motion for Award of Attorney's Fees and Costs to Class Counsel and Incentive Payment to the

17   Class Representative 2, ECF No. 21.)  There is no dispute that the plaintiff is entitled to

18   reasonable attorney fees in this action as the prevailing party.  However, "[i]n a class action, the

19   district court 'must exercise its inherent authority to assure that the amount and mode of payment

20   of attorneys' fees are fair and proper.' "  Parkinson v. Hyundai Motor America, 796 F.Supp.2d

21   1160, 1170 (C.D. Cal. 2010) (quoting Zucker v. Occidental Petrol. Corp., 192 F.3d 1323, 1328–

22   29 (9th Cir.1999)).

23          Federal Rule 23(h) provides that "[i]n a certified class action, the court may award

24   attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

25   The Ninth Circuit has affirmed the use of two separate methods of calculating attorney fees,

26   depending upon the case.  Hanlon, 150 F.3d at 1029.  "In "common-fund" cases where the

27   settlement or award creates a large fund for distribution to the class, the district court has

28   discretion to use either a percentage or "lodestar" method." Id.

The "lodestar" method is typically used where the benefit received by the class is primarily injunctive in nature and therefore monetary benefit is not easily calculated.  In re Bluetooth Headset Products Liability Litigation (In re Bluetooth), 654 F.3d 15 941.  The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate.  Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).

Since the benefit to the class is easily calculated in a common find case, courts may award a percentage of the common fund rather than engaging in a "lodestar" analysis to determine the reasonableness of the fee request.  In re Bluetooth, 654 F.3d at 942.  In the Ninth Circuit, courts typically calculate 25% of the common fund as the "benchmark" for a reasonable fee award providing adequate explanation in the record for any special circumstances that justify departure.  Id.  The usual range for common fund attorney fees are between 20-30%.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  When applying the percentage of the common fund method in calculating attorney fees, courts use the "lodestar" method as a crosscheck to determine the reasonableness of the fee request.  See Vizcaino, 290 F.3d at 1050.  "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (quoting In re Bluetooth, 654 F.3d at 942).

    1.   Counsel's Request for Twenty-Five Percent of the Gross Settlement Fund is Reasonable

The settlement in this action has resulted in a common fund of $475,000.00.  The attorney fees requested, $118,750.00, are 25% of the gross settlement fund.  Defendants have also agreed to self-administer the settlement, to pay up to $57,645.00 in postage charges for distribution of the settlement, and to change their procedures to comply with the FACTA.

Courts generally reject "the idea that the face value of coupons or rebates should be used for settlement valuation purposes; '[c]ompensation in kind is worth less than cash of the same

nominal value.' " True, 749 F.Supp.2d at 1075 (citations omitted).  However, during the January 14, 2015 hearing, class counsel convincingly argued that the Court should use the percentage of the fund method in determining reasonable attorney fees.

In this instance the participating class members are receiving a Pet Extreme Gift Card which will not expire and is fully transferrable.  Pet Extreme carries approximately 10,224 items that cost less than $45.00.  (Decl. of Eric Gonsalves ¶ 12, ECF No. 20-2.)  Class members who receive a gift card will be able to redeem the gift card for its face value without expending any additional funds should they so choose.  Pet Extreme has also agreed to pay the first $57,645.00 in postage fees and to implement a policy to ensure compliance with FACTA.  Finally, any undisbursed funds do not revert to Defendant, but will be distributed to the designated cypres beneficiaries.  For these reasons, the Court shall apply the percentage of common fund approach in determining attorney fees.  Plaintiff is requesting the Court to award 25% of the common fund ($475,000.00) as attorney fees to class counsel.

In determining if the twenty-five percent benchmark should be adjusted up or down, the Court considers the "the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck."  Ontiveros, 2014 WL 5035935, at *13.

Counsel has negotiated a settlement in which each participating class member will receive a gift card that is worth forty-five percent of the minimum statutory damages.  Additionally, Defendant is paying the cost of postage and implementing a policy to ensure that its' stores are in compliance with FACTA in regards to printing credit card information on receipts.  Counsel has obtained an excellent result for the class.  The results achieved weigh in favor of granting the requested fees.

While the statute litigated here is relatively recent, the issue of whether the statute is violated by printing the expiration date of the credit card on the receipt is clear and willfulness under the statute has been addressed by the Supreme Court.  Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 56-60 (2007).  The issue in this action was whether Defendant's conduct was willful and the action did not involve complex or novel issues.  However, class counsel accepted

1   this action on a contingency basis and as such there was a risk that he would not receive payment

2   for his services.  Consideration of the complexity of the issues involved in this action weigh in

3   favor of granting the fee request.

4          Counsel is highly experienced in litigating FACTA cases and negotiated an early

5   settlement in this action.  Counsel initially communicated with the client on September 11, 2013;

6   and settlement in this action was reached less than a year later by July 9, 2014.  Plaintiff's skill

7   and the quality of his representation support the award of attorney fees.

8          The Court finds that counsel's request for twenty-five percent of the gross settlement

9   fund is fair and reasonable.

10          2.     Lodestar Cross Check

11          Courts frequently cross check the percentage of the common fund fees with the lodestar

12   analysis to determine if the fees are reasonable.  See Vizcaino, 290 F.3d at 1050.

13          a.     **Reasonable Hourly Rate**

14          Counsel states his hourly rate is $550.00 per hour which is consistent with the prevailing

15   rate in Los Angeles and the Central District of California.  (ECF No. 21-1 at ¶¶ 9, 10.)  The

16   loadstar amount is to be determined based upon the prevailing market rate in the relevant

17   community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).  It is the moving party's burden to

18   establish that requested rates are in line with those prevailing in the community for similar

19   services by attorneys of reasonably comparable skill, experience, and reputation.  Jadwin v.

20   County of Kern, 767 F.Supp.2d 1069, 1124 (E.D. Cal. 2011).  The "relevant legal community"

21   for the purposes of the lodestar calculation is generally the forum in which the district court sits.

22   Gonzalez, 729 F.3d at 1205.  Plaintiff has provided no information on the prevailing rates in the

23   Eastern District of California.

24          The court may rely on its own knowledge of customary legal local rates and experience

25   with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926

26   (9th Cir. 2011).  While Plaintiff argues that this Court should accept the rate in the area in which

27   he practices, the Court is aware that there are experienced and competent attorneys litigating

28   consumer cases within this division.  Therefore, the Court shall consider the prevailing rates in

the Fresno Division of the Eastern District of California.

In determining the relevant rate within the Eastern District of California, courts have found that $375.00 per hour is the top range for a senior lead attorney practicing in the Fresno area.  Luna v. Hoa Trung Vo, No. 1:08-cv-01962-AWI-SMS, 2011 WL 2078004, at *5 (E.D. Cal. May 25, 2011) (attorney with more than 40 years' experience and specializing in disability related litigation); see also Joe Hand Productions, Inc. v. Garl, 2013 WL 4736826, at *3 (E.D. Cal. Sept.3, 2013) ($350.00 per hour is reasonable hourly rate for very experienced and skilled trial attorney within the Fresno Division of the Eastern District and awarding attorney with twenty years' experience $350.00 per hour); Jadwin, 767 F.Supp.2d at 1133 (awarding labor law attorney with over 30 years' experience $380 per hour for serving as fee counsel in action).  This Court has recently examined attorney rates in a consumer case, Alonso v. Blackstone Financial, 1:11-cv-01693-SAB, and found that $300.00 per hour is the maximum rate for an experienced attorney in a non-class action consumer action.  Id. at *5.

Mr. Yedalian has experience in prosecuting consumer related lawsuits and has been appointed as class counsel in both state and federal court cases.  (Decl. of Chant Yedalian ¶ 35, 36, ECF No. 13.)  Mr. Yedalian was one of the first attorneys in the nation to prosecute FACTA cases.  (Id. at ¶ 42.)  He has extensive experience in litigating FACTA actions and has litigated at least nine FACTA class action cases.  (Id. at ¶¶ 37, 40.)  Given Mr. Yedalian's overall experience and his experience litigating FACTA case and the issues involved in this class action, the Court finds that $400.00 per hour is a reasonable fee for Mr. Yedalian to be compensated for his services in this action.

**b.    Reasonable Number of Hours**

In determining reasonable attorney fees, the court should exclude hours that could not reasonably be billed to a private client, such as hours that are excessive, redundant or unnecessary.  McCown v. City of Fontana, 565 F.3d 1097, 1101 (9th Cir. 2009); Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  The district court may reduce the hours by 1) conducing "an hour by hour analysis of the fee request," and excluding "those hours for which it would be unreasonable to compensate the prevailing party[;]" or 2) "when faced with a massive

fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." Gonzalez, 729 F.3d at 1203 (quoting Gates, 987 F.2d at 1399).

If the "district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must "set forth a concise but clear explanation of its reasons for choosing a given percentage reduction." Gonzalez, 729 F.3d at 1203 (quoting Gates, 987 F.2d at 1400). There is a recognized exception to this rule where the district court can impose a small reduction, no greater than 10 percent based upon its discretion, without providing a more specific explanation. Gonzalez, 739 F.3d at 1203.

Class counsel submits his time records for in camera review. Counsel's records show that he has expended 200.75 hours to date in litigating this action and he states that he anticipates expending an additional 30 hours before the action is finalized. Accordingly, Plaintiff submits that he will have expended 230.75 hours in litigating this action. Review of the attorney time records provided by Mr. Yedalian raise some areas of concern regarding the reasonableness of the hours. For example:

- On September 13, 2013, 1:15 hours are billed for preparing an attorney-client retainer agreement which would be a standard fill in the blank form. The amount of time billed appears to be excessive.

- From September 25, 2013 through September 29, 2013, over 18 hours are billed for driving to various store locations throughout California to investigate Plaintiff's claims. These are hours that could easily have been designated to nonprofessionals. Reibstein v. Rite Aid Corp., 761 F.Supp.2d at 259 ("Just as '[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn,' counsel should not be using 'highly priced talent for matters easily delegable to non-professionals or less experienced associates.' ")(quoting Uric v. Bethlehem Mines, 719 F.2d 670, (3d Cir. 1983); see Missouri v. Jenkins, 491 U.S. 274, n.10 (1989) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and

statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.  Such non-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it.").

- On November 2, 2013, 35 minutes were billed for completing a civil cover sheet and filing with the complaint.  These hours are excessive and filing the complaint is a clerical task.  Clerical tasks are part of an attorney's overhead and are not compensable at the attorney's hourly rate.  <u>Robinson v. Plourde</u>, 717 F.Supp.2d 1092, 1100-1101 (D. Haw. 2010); <u>Prison Legal News v. Schwarzenegger</u>, 561 F.Supp.2d 1095, 1101-1102 (N.D. Cal. 2008).

- On November 11, 2013, 10 minutes were billed for texting a request to the client for a call.  This seems to be an excessive amount of time to compose a text message given the medium by which the recipient will be able to view it.

- On December 6, 2013, 10 minutes were billed for filing an executed waiver of summons with the Court.  This is a clerical task.

- On January 1, 2014; November 3, 2014; May 13, 2014; July 17, 2014; July 18, 2014; and August 25, 2014, counsel billed for 5 minutes each, for a total of 30 minutes, to review orders issued by this Court that consisted of one to two paragraphs.  Again, the Court finds this time to be excessive.

Upon review of the billing records, the court finds that the hours requested by counsel should be reduced by five percent to account for excessive and inappropriately billed hours.  The Court finds that 219.2 hours is a reasonable amount of hours to have been expended in litigating this action.

### c.     The Lodestar Analysis Supports the Award of Attorney Fees

Based upon the foregoing, the Court determines that under a lodestar analysis, class counsel's reasonable attorney fees would be $87,680.00 (219.2 hours at $400.00 per hour). While the Court recognizes that this is somewhat out of line with the total provided by the percentage of the fund requested ($118,750.00), class counsel did take this action on a contingency basis, negotiated an early settlement by which the participating class members have

received significant benefit, and the class received additional benefit beyond the gross settlement amount.  While the Court is unable to place a monetary value on the equitable relief provided by the settlement, the settlement agreement also provides that Defendant will assume the first $57,645.00 in postage costs and the costs of administering the settlement agreement. Considering the value of these additional benefits provided by the settlement agreement, the amount requested by class counsel is actually less than twenty-five percent of the benefit received by the class.  Accordingly, the Court finds that the lodestar analysis supports the award of attorney fees.  The Court recommends awarding class counsel twenty-five percent of the common fund or $118,750.00 as attorney fees in this action.

### E.    Incentive Award to Class Representative

The class representative is requesting an incentive award of $5,000.00 for serving the class in this action.  In the findings and recommendations approving the preliminary settlement agreement, the Court expressed its concern with the $10,000.00 payment originally requested by the class representative.

> This seems excessive in relation to the amount that the unnamed class members will be receiving.  Plaintiff has not set forth any information as to the amount of time that she devoted to this action, or that she made any personal sacrifices on behalf of the class.  At the fairness hearing, based upon the detailed evidence of Plaintiff's actual involvement in litigating this action, the Court will determine what portion of the amount sought is actually justified.

(ECF No. 21-1 at 11:7-12.)   Plaintiff has submitted a request for an incentive award of $5,000.00.

Incentive awards "are payments to class representatives for their service to the class in bringing the lawsuit."  Radcliffe v. Experian Information Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  These awards come out of the class's recovery in instances where the class receives a monetary settlement.  Radcliffe, 715 F.3d at 1163.  While the court may approve incentive awards, the Ninth Circuit has advised district courts to carefully scrutinize the awards to ensure they do not undermine the adequacy of the class representatives.  Radcliffe, 715 F.3d at 1163.

18

1    In <u>Staton</u>, the Ninth Circuit found it was an abuse of discretion to approve a settlement

2    where the class representatives received an incentive award that was, on average sixteen times

3    greater than the award that the unnamed class members would receive.  327 F.3d at 946.  The

4    district court must evaluate the fairness of the incentive award by considering "relevant factors

5    includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to

6    which the class has benefitted from those actions, ... the amount of time and effort the plaintiff

7    expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation."  <u>Id.</u> at

8    977 (quoting <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998)).

9    In prosecuting this action, Plaintiff has communicated with counsel, reviewed documents,

10   and provided input during the rounds of settlement negotiations.  (ECF No. 21-1 at ¶ 26.)

11   Counsel estimates that Plaintiff has devoted 25 to 30 hours to pursing this litigation.  (<u>Id.</u> at ¶

12   29.)

13   In this instance, Plaintiff is seeking to receive $5,000.00 for her participation in the

14   litigation compared to the unnamed class members who will only receive a gift card to Pet

15   Extreme worth up to $45.00.  Were the Court to grant Plaintiff's request, she would be receiving

16   5 times the maximum statutory damages available, and at least 200 times more than the unnamed

17   class members, in addition to the fact that she is requesting a cash payment while the unnamed

18   class members will only receive a gift card.  Further, at $5,000.00 the class representative is

19   seeking $200.00 to 166.67 per hour for the time she devoted to assisting the class in this action.

20   Plaintiff has not provided any reason for the Court to justify the extreme discrepancy between

21   the award she is seeking and the damages to be received by the unnamed class members.

22   This action was litigated for a period of less than one year.  Plaintiff's assistance did

23   result in this action settling and the class members will benefit from her participation.  However,

24   there is no evidence that Plaintiff spent more time assisting counsel than would occur in an

25   average case.  Plaintiff did not provide any discovery or participate in depositions.  Plaintiff's

26   consultation with counsel and review of settlement documents is no more than an average litigant

27   would do in participating in a case.

28   Further, while recognizing that Plaintiff did assume some personal risk in litigating this

1  action, contrary to Plaintiff's assertion, the allegations here regarding violations of the FACTA

2  are not the type that would be expected to lead to intrusive discovery being propounded to

3  Plaintiff; nor have the allegations in this action subjected Plaintiff to any personal notoriety in

4  bringing these claims.

5      Plaintiff cites one published case, In re Toys R Us-Delaware, Inc.—Fair and Accurate

6  Credit Transactions Litigation (Toys R Us), 295 F.R.D. 438 (C.D. Cal. 2014), where the court

7  approved a settlement in which unnamed class members would receive vouchers ranging from

8  $5 to $30.  Id. at 447-48.  In Toys R Us, the aggregate amount of relief to the settlement class in

9  the action was estimated to be between $65.25 million and $391.5 million.  Id. at 453.  The case

10  was the result of two separate class actions in which class certification was initially denied and

11  then granted following the Ninth Circuit's decision in Bateman v. American Multi–Cinema, Inc.,

12  623 F.3d 708 (9th Cir.2010).  The parties participated in three mediation sessions, a motion for

13  summary judgment was decided, and the case was appealed to the Ninth Circuit.  Toys R Us, 295

14  F.R.D. at 444-45, 447.  Following seven years of litigation, the parties settled and the class

15  representatives were awarded an incentive award of $5,000.00.  Id. at 471-72.  The Court finds

16  this action to be distinguishable from Toys R Us as this action was filed less than one year prior

17  to settlement, extensive discovery was not conducted, and the parties did not participate in

18  mediation, nor were any disputed motions filed.

19      The Court finds Plaintiff's participation in this action similar to cases in which incentive

20  awards in the range of $2,000.00-3,000.00 have been found appropriate to compensate the class

21  representative for participation in a class action.  See Monterrubio v. Best Buy Stores, L.P., 291

22  F.R.D. 443, 462-63 (E.D. Cal. 2013) (awarding class representative $2,500.00 where action

23  settled for $400,000.00 and each class member will receive $65.79); Wolph v. Acer America

24  Corporation, No. C 09-01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing

25  incentive award to $2,000.00 where named representatives did not demonstrate any great risk to

26  either finances or reputation in bringing the class action); Rigo v. Kason Industries, Inc., No. 11-

27  cv-64-MMA(DHB), 2013 WL 3761400, at *8 (S.D. Cal. July 16, 2013) (finding $2,500.00

28  incentive award for more than two years of service well within the acceptable range); Vinh

Nguyen v. Radient Pharmaceuticals Corp., No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) (approving $2,000.00 for class representatives where settlement was reached after discovery was completed, class representatives participated in depositions, and class settled for $2.5 million).

The Court finds that Plaintiff is entitled to an incentive award for her efforts on behalf of the class members.  However, given the time this action was litigated, the large disproportion of the incentive award to the recovery of the unnamed class members, and the actual time Plaintiff devoted to this action, Plaintiff is entitled to an incentive award in the mid range of the cases reviewed.  Giving consideration to the relevant factors, the Court finds an incentive award to Plaintiff of $2,500.00 for her efforts in this action is fair and reasonable.

## V.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.    Final approval of the proposed settlement upon the terms and conditions set forth in the agreement, as partially modified by the parties' stipulation regarding amendments to Defendant's proposed charities (ECF No. 18) and the Court's September 23, 2014 Order (ECF No. 19) be granted.

2.    The terms of the proposed Settlement be found to be fair, adequate and reasonable and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

3.    The following settlement class be certified for settlement purposes only:

> All consumers who, at any time during the period November 2, 2011 to October 18, 2013, were provided an electronically printed receipt at the point of a sale or transaction at any Pet Extreme or Discount Pet store, on which receipt was printed the expiration date of the consumer's credit card or debit card.

4.    For purposes of the settlement, the above-defined settlement class be found to meet all of the requirements of Rule 23(a) and 23(b)(2).

5.    The notice that has been provided to the settlement class members, as well as the means by which it was provided constitutes the best notice practicable under the circumstances and is in full compliance with the United States Constitution and the requirements of due process

and Rule 23 of the Federal Rules of Civil Procedure.  Further, that such notice fully and accurately informed settlement class members of all material elements of the lawsuit and proposed class action settlement, of each member's right to be excluded from the settlement, and each member's right and opportunity to object to the proposed class action settlement and be heard at the final approval (fairness) hearing.

6.     No settlement class members have timely requested exclusion from the settlement.

7.     No settlement class members have timely objected to the settlement.

8.     No settlement class members have timely requested to appear or be heard at the final approval hearing.

9.     All settlement class members who did not timely exclude themselves from the settlement be bound by the agreement, including the releases contained in paragraphs 17 and 18 of the agreement.

10.     The parties be directed to effectuate all terms of the settlement and the agreement.

11.     Reasonable attorney fees in the amount of $118,750.00 be awarded to Class Counsel Chant Yedalian of Chant & Company A Professional Law Corporation.  Defendant Pet Extreme, Inc. be directed to make payment of this award to Class Counsel pursuant to the terms of the agreement.

12.     Class representative, Cirena Torres be awarded an incentive of $2,500.00 in compensation for her service as the representative of the settlement class.  Defendant Pet Extreme, Inc. be directed to make payment of this award to the class representative pursuant to the terms of the agreement.

//

//

//

//

//

//

13.     The parties bear their own fees and costs except as expressly provided in the agreement.

14.     This action be dismissed with prejudice in accordance with the terms of the agreement; however, the Court shall retain continuing jurisdiction to interpret, implement and enforce the settlement, and all orders and judgment entered in connection therewith.

IT IS SO ORDERED.

Dated:   **January 14, 2015**

UNITED STATES MAGISTRATE JUDGE

23